[Civ. No. 1756.    Third Appellate District.—December 11, 1917.]

## COUNTY OF ALAMEDA, etc., Petitioner, v. JOHN S. CHAMBERS, as Controller, etc., Respondent.

CONSTITUTIONAL LAW — APPROPRIATION FOR LOSS OF STATE FAIR EXHIBITS—PURPOSE NOT PUBLIC.—The act of the legislature appropriating money to pay the claims of various persons and counties against the state of California for losses sustained by fire in the state agricultural society's pavilion at Sacramento, California (Stats. 1917, p. 1668), is not an appropriation for a public purpose, since it provides for compensation for the loss of property, and the destruction of property does not contribute to the promotion of the public interest.

ID.—INVALIDITY OF ACT—EFFECT OF STATE AGRICULTURAL SOCIETY ACT OF 1880.—The act appropriating money to compensate persons and counties for losses sustained by fire in the state agricultural society's pavilion is invalid, in view of subdivision 5 of the act of 1880 (Stats. 1880, p. 49), which vests in the state board of agriculture the exclusive management and control of state fairs, and provides that in no event shall the state be liable for any premium awarded or debt created by such board.

ID.—GIFT—ACT UNCONSTITUTIONAL.—The act appropriating money to compensate counties and persons for loss of exhibits by fire in the state agricultural society's pavilion is invalid, in view of article IV, section 31, which provides that the legislature shall have no power to make any gift to any individual, municipality, or other corporation, by reason of the inclusion of individuals therein, although the act might be valid as to counties.

APPLICATION for a Writ of Mandate originally made to the District Court of Appeal for the Third Appellate District to compel the state controller to draw his warrant for a sum of money appropriated by the legislature to pay for loss of state fair exhibits.

The facts are stated in the opinion of the court.

W. H. L. Hynes, District Attorney of Alameda County, for Petitioner.

U. S. Webb, Attorney-General, and Robert T. McKisick, Deputy Attorney-General, for Respondent.

BURNETT, J.—Petitioner asks for a writ of mandate to compel the respondent, as controller, to issue his warrant for the sum of $4,603.96, under the provisions of an act of the legislature (Stats. 1917, p. 1668), which reads as follows:

"The sum of thirty thousand dollars, or so much thereof as may be proved to be due, is hereby appropriated out of any moneys in the state treasury not otherwise appropriated, to pay the claims of various persons and counties against the state of California for losses sustained by fire in the state agricultural society's pavilion at Sacramento, California, subject to the provisions of section six hundred sixty-three of the Political Code."

Section 663 of the Political Code, above referred to, provides that "every claim against the state for which an appropriation has been made or for which a state fund is available, must be presented to the board [of control] for its scrutiny before being paid."

The petition alleges that the county of Alameda is a body corporate and politic of the state, and a political subdivision thereof; that on the 3d of September, 1916, the state of California maintained in the city of Sacramento a state fair; that the county of Alameda, on said date, "was the owner of an exhibit suitable to be used for exhibition at fairs such as that maintained by said state; that said state fair was conducted by the state for the purpose of promoting the best interests and welfare of said state, and for the purpose of advertising and making known the resources and products thereof; that various counties of the state, of which the petitioner is one, for the purpose of aiding the said state in the conduct and maintenance of said fair, maintained exhibits thereat"; that, for the purposes aforesaid and at the request of the state, said county of Alameda placed its said exhibit in the charge of the state and its duly authorized officers conducting said fair, and that said exhibit was of the reasonable market value of five thousand dollars; that, on said third day of September, 1916, said exhibit was completely destroyed by

fire; that it was negligently housed by the state and was permitted to be kept "in a building temporarily constructed of canvas and other inflammable material, not suitable or safe for the housing of such an exhibit." It is then alleged that on August 11, 1917, after scrutiny by the board of control, said claim was allowed and approved by said board for the sum of $4,603.96, and was sent to the respondent for the purpose of having him draw his warrant for said sum, which respondent has refused to do.

Respondent filed an answer denying specifically all the allegations of the petition above set forth, except that petitioner is a body corporate and politic. It is then alleged in the answer that petitioner "did, through its authorized officers, and prior to the third day of September, 1916, hire of and rent from the state of California a certain space in a building belonging to said state upon the state fair grounds, for the purpose of placing in said building . . . an exhibit for the purpose of advertising the products and resources of said county of Alameda, and that said county paid to said state for said exhibit space so rented a valuable consideration"; that petitioner placed said exhibit in said building in charge of its duly authorized agents, and that the building was properly constructed; that the fire referred to was not due to the fault of the state or any of its officers.

There is also an allegation in the answer that the petition does not state facts sufficient to constitute a cause of action, or to entitle petitioner to the relief prayed for.

The respondent declined to issue his warrant for the sum found by the board of control to be due petitioner on account of said loss, on the ground that the claim was repugnant to the provisions of section 31, article IV, of the constitution, providing that "the legislature shall have no power . . . to make any gift, or authorize the making of any gift, or any public money or thing of value to any individual, municipal or other corporation whatever."

The position taken by petitioner in support of his contention that the writ should issue is (1) that the act is constitutional on its face, and, therefore, must be upheld, the court not being allowed to examine into extraneous questions of fact; (2) that the act does not make a gift within the constitutional inhibition but is an appropriation for a public purpose; and (3) that, conceding that the legislation in ques-

tion does make a gift as that term is used in section 31 of article IV of the constitution, still the county is not a "corporation" as that term is used in said section.

In support of the contention that the act is constitutional on its face, petitioner cites *Stevenson* v. *Colgan,* 91 Cal. 649, [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089]; and *Rankin* v. *Colgan,* 92 Cal. 606, [28 Pac. 673]. Both of these cases occurred before 1893, in which year the legislature passed an act permitting persons to sue the state for negligence, where their claims had been denied by the board of examiners. (Stats. 1893, p. 57.)

In *Stevenson* v. *Colgan,* the act in question provided: "The sum of $125 per month, payable monthly for the period of twenty-one months, is hereby appropriated out of any moneys in the state treasury not otherwise appropriated for the relief of Colonel Jonathan D. Stevenson; provided, however, that said appropriation shall cease upon the death of said Stevenson if he shall die before said period has elapsed; the sums paid under the provisions of this act to be accepted by the said Stevenson in full payment and satisfaction of all claims of every kind and nature that he may have or claim to have against said state for services, or otherwise."

It was objected by the controller that as a matter of fact Stevenson had no claim against the state. The court held that the act was constitutional on its face, saying among other things: "The act in question does not show upon its face the nature of the claim which the petitioner made against the state."

In *Rankin* v. *Colgan,* the act in question read: "The sum of $250 is hereby appropriated out of any moneys in the state treasury not otherwise appropriated, to pay James W. Rankin for services in the state treasurer's office during the period elapsing from November 13, 1884, to December 15, 1884, both dates inclusive, under appointment by Governor George Stoneman, on account of the delinquencies of Arthur January, deputy state treasurer."

The court relied on the Stevenson case, saying *inter alia:* "The nature of the services rendered under and by virtue of his appointment by Governor Stoneman does not appear."

The foregoing cases would be in point and conclusive of the controversy here were it not for the recital in the appropriation of the purpose for which it was made, namely, "to

pay the claims of various persons and counties against the
state of California for losses sustained by fire in the State
Agricultural Society's pavilion.'' In other words, if the act
had simply provided that ''the sum of thirty thousand dol-
lars or so much thereof as may be proved to be due is hereby
appropriated out of any moneys in the state treasury not
otherwise appropriated to pay the claims of various persons
and counties [enumerating them] against the state of Cali-
fornia, subject to the provisions of section 663 of the Political
Code,'' there would be an end to the inquiry after the board
of control had allowed the claim of such person or county,
and this for the reason stated in the Stevenson case, but since
the legislature has seen fit to declare the nature of the claim,
we are compelled to inquire whether it may be legally re-
garded as the basis of a debt or obligation on the part of the
state. That it is an appropriation for a public purpose can
hardly be successfully asserted. It provides for compensa-
tion for the loss of property, and manifestly the destruction
of property does not contribute to the promotion of the public
interest. The cases cited by petitioner as to this point are
essentially different, as is readily apparent. In *Daggett* v.
*Colgan,* 92 Cal. 53, [117 Am. St. Rep. 95, 14 L. R. A. 474,
28 Pac. 51], an act appropriating three hundred thousand
dollars for the purpose of erecting a building and exhibiting
the state's products at the Chicago fair was attacked. It was
held, however, that the appropriation was for a public pur-
pose and for the promotion of the public welfare, the court,
among other things, saying: ''There is no difference except
in degree between the appropriation contained in this act
and those which for years have been made without any ques-
tion as to their validity for the support of the state agri-
cultural fair, and the various district agricultural societies
throughout the state.'' The justification for such expendi-
ture was based upon the proposition that the state has the
general power to provide for the public welfare, ''the limits
of which are perhaps not capable of exact definition.''

So in *Board of Directors* v. *Nye,* 8 Cal. App. 527, [97 Pac.
208], an appropriation for the relief and support of the
Women's Relief Corps Association was upheld on substan-
tially the same ground, it being clearly pointed out that the
association constituted a state institution engaged in an
important and patriotic public purpose.

The same principle is expounded and applied in the *County of Sacramento* v. *Chambers,* 33 Cal. App. 142, [164 Pac. 613], wherein was involved an appropriation by the state in aid of work for the relief of tuberculosis carried on by counties under the direction of the state authorities.

If the appropriation here had been made for the purpose of paying expenses incurred in connection with the undertaking of making an exhibit of the state's resources, it could be said undoubtedly that it was for a public purpose, but that situation is not presented, at least not directly so.

But may we not assume that this appropriation was in recognition of an obligation of the state connected with and growing out of the promotion of such public purpose? In other words, may we not hold that the state may have made a contract with the county of Alameda to place said exhibits in the custody of the former in furtherance of the purposes of the state fair, and, therefore, became liable as bailee for the safekeeping of said property? If so, the case would fall under the rule announced in *Chapman* v. *State,* 104 Cal. 690, [43 Am. St. Rep. 158, 38 Pac. 457], wherein it was held that "a cause of action for damages for the loss of coal received at a public wharf, under the jurisdiction of the state harbor commissioners, in consideration of wharfage and dockage paid to them, and which was agreed to be delivered on such wharf for removal therefrom and which was lost by the breaking away of the wharf through neglect of the harbor commissioners to keep the wharf in repair, is grounded in breach of contract and not merely upon the negligence of the harbor commissioners; and the state is liable for the loss of the coal." The decision was grounded upon the principle that a state is bound by the same rules as an individual in measuring its liability on a contract, and to that effect a quotation was made with approval from *People* v. *Stephens,* 71 N. Y. 549. The rule, though, necessarily presupposes a valid contract with the state. (*Melvin* v. *State,* 121 Cal. 16, [53 Pac. 416].) But the trouble with the supposition in the case here is that the state cannot make such contracts and that it is not liable for any debts contracted in reference to the exhibits at the state fair. Section 5 of "An act to provide for the management and control of the State Agricultural Society of the State" (Stats. 1880, p. 49) provides: "The State Board of Agriculture shall be charged with the exclusive management and

control of the state Agricultural Society as a state institution; shall have possession and care of its property and be intrusted with the direction of its entire business and financial affairs. . . . They shall provide for an annual fair or exhibition by the Society of all the industries and industrial products of the state at the City of Sacramento; provided, that in no event shall the state be liable for any premiums awarded or debt created by said Board of Agriculture." It is thus to be seen that all such contracts must be made by said board and that the state incurs no liability therefrom. The act was under consideration in the Melvin case, *supra*, and it was held that said proviso "is to be construed as intended to hold the state free from liability for the obligations which the state board of agriculture might incur, calling directly or indirectly for the payment of money." The state, therefore, could not have incurred any liability for such exhibits by virtue of any contract, and, hence, no action could be maintained for damages for the violation of such contract.

The question remains whether the state could be liable for a tort. As to this, in the Melvin case, it is said: "The states are not suable except with their own consent. . . . No claim arises against any government in favor of an individual by reason of .the misfeasance, laches, or unauthorized exercise of powers by its officers or agents." This is true, at least, in the discharge of governmental functions although the rule may be different where the government is exercising some proprietary right.

It has been furthermore decided that no additional right was conferred by the act of February 28, 1893, entitled "An act to authorize suits against the state and regulating the procedure therein." This act has been regarded as simply affording a remedy where the corresponding right already exists. It is so held in *Melvin* v. *State, supra*.

In *Molineux* v. *State*, 109 Cal. 378, [50 Am. St. Rep. 49, 42 Pac. 34], the effect of this act was considered as to its bearing upon the liability of the state to pay additional interest upon its war bonds. It was said: "Inasmuch as prior to the passage of the act there was no liability for interest on the part of the state, it was not competent for the legislature to create such liability by the passage of the act."

To the same effect is *Davis* v. *State*, 121 Cal. 210, [53 Pac. 555], wherein it was said: "The act is a mere waiver within

certain bounds of the state's sovereign prerogative not to be sued."

In *Denning* v. *State*, 123 Cal. 316, [55 Pac. 1000], it was declared that this act "did not create any liability or cause of action against the state where none existed, but merely gave an additional remedy to enforce such liability as would have existed if the statute had not been enacted." That decision is also very instructive as to the question whether the state is liable for the tort of its officers. The plaintiff therein was employed by the board of harbor commissioners as a night deckhand·upon its tugboat belonging to the·state and used by said board. While engaged in said employment, plaintiff was injured, through the negligence, as he claimed, of the state acting by said harbor commissioners. It was conceded by the plaintiff that an action would not lie against the state for injuries caused by the negligence of its officers or agents in the discharge of a purely governmental duty, but it was claimed that the defendant was engaged in the discharge of a purely business function, and, therefore, it was liable for negligence. This phase of the subject was carefully considered and the conclusion reached that while certain duties performed by said board would indicate a business for profit, the particular branch of the service in which the plaintiff was engaged, namely, the protection against or extinguishment of fires, constituted the exercise of a purely governmental function. As to this matter, it would seem no doubt could exist that anything done by the state as to the exhibits at the state fair must necessarily relate to the general public welfare and could not in any just sense be regarded as an act for the promotion of business for profit.

The said act of 1893 is also referred to in *County of San Luis Obispo* v. *Gage*, 139 Cal. 398, [73 Pac. 174], and *Bickerdike* v. *State*, 144 Cal. 681, [78 Pac. 270], but neither has any relation to the point herein involved.

In *Union Trust Co.* v. *State of California*, 154 Cal. 716, [24 L. R. A. (N. S.) 1111, 78 Pac. 270], the question involved was as to the liability of the state for the payment of certain "Montgomery Avenue Bonds," and it was held that the officers whose duty it was to levy and collect the assessments necessary to discharge the bonds were agents of the state and were charged with governmental functions, and that the state was not liable for their negligence, since they were en-

gaged in discharging ordinary official duties pertaining to the administration of the government of the state.

The most recent decision of the supreme court involving a consideration of the difference between a private or proprietary and a governmental capacity in which a municipality or state may exercise its functions is *Chafor* v. *City of Long Beach,* 174 Cal. 478, [163 Pac. 670]. Therein it was held that a city in constructing and maintaining an auditorium was acting in its proprietary capacity, and was liable for damages to plaintiff caused by the negligent maintenance of the structure. That case is manifestly different from this in the nature of the enterprise and in the circumstance that it affected a municipality instead of the state.

We think it must be held that the appropriation is one based upon an implied liability that cannot legally exist either by virtue of a contract or by reason of the negligence of the officers of the state, since the tort, if committed, related to a governmental function instead of a proprietary business.

It would seem, therefore, that the appropriation not being based upon any legal liability constitutes a gift within the contemplation of said constitutional provision, and cannot be maintained.

There remains the other proposition that the county is but an agency of the state and not a "corporation" as the term is used in said section 31, article IV, of the constitution. Hence, it is contended that the inhibition against a "gift" does not apply to petitioner. The character of a county as an entity has been carefully considered in some of the cases cited herein, especially in *County of Sacramento* v. *Chambers, supra,* but the point, if well taken, cannot save the situation. The appropriation is of one lump sum for individuals and for counties, and it is quite apparent that the legislature intended to treat such claims upon the same basis. There was no appropriation of a specific amount for the claims of individuals and a distinct appropriation for the counties. Upon the assumption, therefore, that the indivisible part of the appropriation for the claims of counties may be regarded as legal, it is impossible to determine what that portion is; in other words, how much or what portion of the act is valid and what invalid. They are so inseparably connected that the unconstitutional character of the appropriation for individuals permeates and vitiates the whole act. If

it be not so, it would be difficult to conceive of a case for the application of the familiar rule for considering an act as an entirety where it was manifestly the intention of the legislature to so regard it.

It is believed that the appropriation cannot stand, and the demurrer is, therefore, sustained and the order to show cause discharged.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1918.