[Civil No. 1783.   Filed April 28, 1920.]

[189 Pac. 631.]

STATE, Appellant, v. CLAUDE SHARP, by W. L. SHARP, His Guardian Ad Litem, Appellee.

1. STATES—CAN BE SUED ONLY WITH THEIR CONSENT.—The state in consequence of its sovereignty is immune from prosecution and from liability for negligence, except where it has expressly waived immunity or assumed liability by constitutional or legislative enactment.

2. STATES—STATUTE HELD NOT TO RENDER STATE LIABLE FOR NEGLIGENCE OF EMPLOYEE.—Civil Code of 1913, paragraph 1791, authorizing suits against the state in any court of competent jurisdiction, merely provides a remedy for an existing right, and does not make the state liable for negligence of its employee.

3. STATUTES—STATUTE GIVEN SAME CONSTRUCTION AS IN STATE FROM WHICH ADOPTED.—Where a statute is taken from another state, it carries with it the construction theretofore given to it by the highest court of the state from which it is taken.

4. STATES—STATE NOT LIABLE TO WORKMAN INJURED IN WORK ON CAPITOL.—Even if a state engaging in work not a governmental function is liable for negligence of its employees in the conduct of such work, it is not liable for negligence of its employees constructing an addition to the state capitol for the care of public business which was a strictly governmental function.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Reversed.

Mr. Wiley E. Jones, Attorney General, Mr. Louis B. Whitney and Mr. Alexander B. Baker, Assistant Attorneys General, for the State.

Messrs. Cox, Moore & Gerard, Mr. L. J. Cox, Messrs. Leyhe & Burch, and Mr. H. B. Shoemaker, for Appellee.

BAKER, J.—The plaintiff, Claude Sharp, by his guardian *ad litem,* W. L. Sharp, brings this action against the defendant, the state of Arizona, to recover damages for personal injuries. It is substantially alleged in the complaint that in the month of March, 1919, the state of Arizona, by and through its agents, servants and employees, including the plaintiff, was engaged in the construction of an addition to the capitol building in Phoenix, Arizona. During the progress of the work a derrick used for lifting heavy stones was negligently operated by some of the state's employees other than the plaintiff, and fell upon the plaintiff and seriously injured him. The defendant demurred that the complaint did not state

4. On liability of state for injury in state building, see note in 42 L. R. A. (N. S.) 251.

the facts sufficient to constitute a cause of action. The demurrer was overruled. A judgment in the sum of $5,000 was rendered in favor of the plaintiff, and the defendant appeals. There is no dispute about the facts. They are agreed to be as stated in the complaint.

A single question is presented by the appeal for consideration and determination, and it is an important' one. The question is whether the state is liable to respond in damages for the negligent acts of its agents, servants or employees. As to this question it is well settled by the great weight of authority that the state, in consequence of its sovereignty, is immune from prosecution in the courts and from liability to respond in damages for negligence, except in those cases where it has expressly waived immunity or assumed liability by constitutional or legislative enactment. *Murdock Parlor Grate Co.* v. *Commonwealth,* 152 Mass. 28, 8 L. R. A. 399, 24 N. E. 854; *Riddoch* v. *State,* 68 Wash. 329, Ann. Cas. 1913E, 1033, 42 L. R. A. (N. S.) 251, 123 Pac. 450; *Davis* v. *State,* 30 Idaho, 137, Ann. Cas. 1918D, 911, 163 Pac. 373; *Smith* v. *State,* 227 N. Y. 405, 125 N. E. 841.

Counsel for the plaintiff, in a well-prepared brief filed in the case, forcibly argues that the state has waived immunity and assumed liability for the negligence charged in the complaint by virtue of paragraph 1791, Civil Code of 1913, which reads as follows:

"All persons who have, or who shall hereafter have claims on contract or for negligence against the state, which have been disallowed, are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment. The rules and practice in civil cases shall apply to such suits except as herein otherwise provided."

This provision was evidently taken from California, as it is an exact counterpart of section 1 of the California act of February 28, 1893 (Stats. 1893, p. 57), found in Henning's General Laws of California (2d ed., Deering, 1914), page 1773. The provision has been construed a number of times by the Supreme Court of that state. The cases are collated in *Alameda County* v. *Chambers,* 35 Cal. App. 537, 170 Pac. 650, and we quote liberally from the opinion:

"The question remains whether the state could be liable for a tort. As to this, in the *Melvin case* [121 Cal. 6, 53 Pac. 416] it is said: 'The states are not suable except with their own consent. . . . No claim arises against any government in favor of an individual, by reason of the misfeasance, laches, or unauthorized exercise of powers by its officers or agents.' This is true at least in the discharge of governmental functions, although the rule may be different where the government is exercising some proprietary right.

"It has been furthermore decided that no additional right was conferred by the act of February 28, 1893, entitled 'An act to authorize suits against the state, and regulating the procedure therein.' This act has been regarded as simply affording a remedy where the corresponding right already exists. It is so held in *Melvin* v. *State, supra.*

"In *Molineux* v. *State,* 109 Cal. 378, 50 Am. St. Rep. 49, 42 Pac. 34, the effect of this act was considered as to its bearing upon the liability of the state to pay additional interest upon its war bonds. It was said: 'Inasmuch as prior to the passage of the act there was no liability for interest on the part of the state, it was not competent for the legislature to create such liability by the passage of the act.' To the same effect is *Davis* v. *State,* 121 Cal. 210, 53 Pac. 555, wherein it was said: 'The act is a mere waiver within certain bounds of the state's sovereign prerogative not to be sued.'

"In *Denning* v. *State,* 123 Cal. 316, 55 Pac. 1000, it was declared that this act 'did not create any liability or cause of action against the state where none ex-

isted before, but merely gave an additional remedy to enforce such liability as would have existed if the statute had not been enacted.' "

In *Alameda County* v. *Chambers* the question involved was as to whether a writ of mandate would issue to compel the state comptroller to issue his warrant under the provisions of an act of the legislature appropriating money to pay the claims of various persons against the state for the negligent destruction of exhibits at a fair held and conducted by the state. In the opinion the court, reviewing its former decisions construing the act of February 28, 1893, refused to issue the mandate, saying:

"We think it must be held that the appropriation is one based upon an implied liability that cannot legally exist either by virtue of a contract or by reason of the negligence of the officers of the state, since the tort, if committed, related to a governmental function instead of a proprietary business. It would seem, therefore, that the appropriation, not being based upon any legal liability, constitutes a gift within the contemplation of said constitutional provision, and cannot be maintained."

The construction placed upon the act by these decisions evidently proceeds upon the theory that the liability of the state was not enlarged; that no cause of action was created which did not theretofore exist; that the effect of the act was merely to give a remedy to enforce a liability, the state submitting itself to the jurisdiction of the court subject to its right to impose any lawful defense. Immunity from an action is one thing; immunity from liability is another; hence the state does not waive its immunity from liability for the negligence of its agents, servants or employees by a statute conferring jurisdiction only upon the court. *Smith* v. *State*, 227 N. Y. 405, 125 N. E. 841.

We feel constrained to follow the decisions of the Supreme Court of California as applied to the con-

struction of paragraph 1791, Civil Code of 1913, under the familiar rule that, where a statute is taken from another state, such statute carries with it the construction theretofore given to it by the highest court of the state from whence the statute is taken, and therefore we hold that the state did not assume liability for the negligence charged in the complaint by virtue of said paragraph 1791.

The New York cases holding the state liable for the torts of its servants and employees are clearly distinguishable as we read them for the reason that these cases, in the main, are based upon statutes expressly imposing liability on the state. The distinction is pointed out in a passage in *Smith* v. *State, supra,* as follows:

"This court, in *Litchfield.* v. *Bond,* 186 N. Y. 66, 83, 78 N. E. 719, 725, declared the general rule, and in doing so said: 'The cases which are sometimes referred to as exceptions to this general rule are not exceptions at all, for they do not fall within the rule. When a state, by express enactment of statutes, assumes responsibility for such torts of its officers and agents as are not affected or controlled by the fundamental law, it makes a new rule for itself. Instances of that kind are to be found in *Sipple* v. *State of New York,* 99 N. Y. 284, 1 N. E. 892, 3 N. E. 657, where the legislature enacted a statute making the state liable for the negligent operation of its canal locks, upon proof that would create a legal liability against an individual or a private corporation, and in *Woodmen* v. *State of New York,* 127 N. Y. 397, 28 N. E. 20, where negligence in the maintenance of a defective canal bridge was attributed to the state under a similar statute.' "

The plaintiff seeks to make a distinction whereby. he confines the rule of nonliability of the state to instances where the negligence of the agent or employee of the state occurred in the discharge of some purely governmental function, and argues that in building the addition to the capitol the state was en-

gaged in "ministerial" work, and that the rule of nonliability does not apply. We have not been cited to any authority directly recognizing this exception. The nearest approach to a decision on the point which we have been able to find is the case of *Chafor* v. *City of Long Beach,* 174 Cal. 478, Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670. It was held in that case that a city in constructing and maintaining an auditorium was acting in its proprietary capacity, and was liable for damages to plaintiff caused by the negligent maintenance of the structure. The court, however, in *Alameda County* v. *Chambers, supra,* distinguishing the case, said:

"That case is manifestly different from this in the nature of the enterprise and in the circumstance that it affected a municipality instead of the state."

In *Riddoch* v. *State, supra,* the court, distinguishing between a liability upon the part of a municipal corporation, on the one hand, and upon the part of the state, on the other, said:

"On the other hand, the state is inherently sovereign at all times and in every capacity. It is the organized embodiment of the sovereign power of the whole people. By reason of this sovereignty, it possesses all powers, but only such powers, as are within the limitations of the state Constitution and without the prohibition of the federal Constitution. It can do no act except in the exercise of this sovereign power and within these constitutional limitations. If it may constitutionally take over any enterprise, though usually of the nature of a private business, the very taking over is an exercise of this sovereign power. It seems much more logical and much more consonant with the idea and genius of sovereignty that the enterprise thus taken over should be impressed with the sovereign character of the state than that the state should become hampered by the private character of the enterprise. The latter result is incompatible with the concept of sovereignty."

Be that question as it may, we are fully convinced that the state, in constructing the addition to the capitol, was, in a broad sense, exercising a "governmental" function. The addition was authorized by section 48, chapter 90, Laws of 1917. That section of the act appropriated $125,000 for that purpose. The board of control was given the power to expend money appropriated out of the "capitol building fund." Section 4 of an initiative measure which took effect December 14, 1914 (Laws 1915, p. 19) provides that "all work on state buildings . . . and all other state construction, shall be done by day's pay, by the state. . . . " The use to which the addition was to be put is not to be lost sight of. It was built for the purpose of housing public servants and to take care of public business, and not for profit or gain. It was designed as an instrumentality for governmental purposes. The very nature of the enterprise made the work a governmental function.

The facts of the case arouse a feeling of great sympathy upon our part for the plaintiff, but sympathy cannot be suffered to take the place of judicial decision. It is our duty to declare the law as we find it, not to make it, even in accord with our own desires or wishes.

The judgment of the lower court is reversed, with instructions to sustain the demurrer to the complaint.

CUNNINGHAM, C. J., and ROSS, J., concur.