[Civ. No. 4526. First Appellate District, Division One.—July 26, 1923.]

## JOHN C. FROHLIGER, Respondent, v. F. W. RICHARD-SON, as State Treasurer, et al., Appellants.

[1] STATUTES — CONSTITUTIONAL LAW—EVIDENCE—JUDICIAL NOTICE.— In passing upon the constitutionality of a statute the court must confine itself to a consideration of those matters which appear upon the face of the law and those facts of which it can take judicial notice.

[2] ID.—RESTORATION OF SAN DIEGO MISSION—CONSTITUTIONALITY OF ACT—FACTS JUDICIALLY NOTICED.—In passing upon the constitutionality of the act of the legislature of 1921 providing for the restoration of San Diego Mission and appropriating money for that purpose (Stats. 1921, p. 1722), the court will take judicial notice of the facts that the San Diego Mission is owned by the Roman Catholic Church, that the title to the property is in the Archbishop of San Francisco, a corporation sole, that the Roman Catholic Church is a sectarian institution, and that the San Diego Mission is not a state institution.

[3] ID.—VOID ACT.—The act of the legislature of 1921 providing for the restoration of San Diego Mission, and appropriating money for that purpose (Stats. 1921, p. 1722), is violative of sections 22, 30, and 31 of article IV of the state constitution.

[4] ID.—INJUNCTION—PARTIES—COSTS.—In an action by a taxpayer against certain state officials, in their official capacity, to enjoin the expenditure of state moneys under an invalid act of the legislature, it is within the discretion of the trial court, in declaring the act to be unconstitutional, to allow the plaintiff his costs.

APPEAL from a judgment of the Superior Court of Alameda County.  T. W. Harris, Judge.  Affirmed.

---

1.  Consideration by courts of extrinsic evidence to show unconstitutionality of statute, notes, 14 L. R. A. 459; L. R. A. 1915D, 458.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Frank English, Deputy Attorney-General, for Appellants.

E. H. Christian, James H. Boyer and Boyer & Havens for Respondent.

ST. SURE, J.—This appeal calls for an opinion upon the constitutionality of an act of the legislature appropriating ten thousand dollars for the restoration of the San Diego Mission.

The legislature, at its session in 1921, passed the following act (Stats. 1921, p. 1722):

"An act to provide for the restoration of the San Diego Mission, appointing a committee therefor, and providing an appropriation to carry this into effect.

"The People of the State of California do enact as follows:

"Section 1. The Governor of this state is hereby empowered to appoint a committee of three citizens of the State of California, to act with a committee of like number appointed by the San Diego Parlor of Native Sons and Daughters of the Golden West, who shall restore the Mission of San Diego.

"Section 2. There is hereby appropriated out of the moneys in the State treasury not otherwise appropriated, the sum of ten thousand dollars to be expended in accordance with law for the purposes of this act."

The plaintiff in this proceeding for injunction sued as a taxpayer of the county of Alameda to enjoin the expenditure of money appropriated by said act. Under the terms of this act the Governor appointed George W. Marston, John Brady, and Samuel S. Porter, as commissioners, to constitute a board of commissioners to carry out the provisions of the act and to spend and dispose of the sum of ten thousand dollars so appropriated. F. W. Richardson, as state treasurer, and Ray L. Riley, as state controller, were joined as defendants.

The complaint for injunction alleges that the money was to be expended in the alteration of the Roman Catholic Church building known as the Mission of San Diego, referred to in the said act of the legislature; that at all times mentioned therein the said Mission of San Diego has consisted,

and does now consist, of land and a church building thereon in the county of San Diego, State of California; that at all times therein mentioned said Mission San Diego has been and now is used for religious purposes by the Roman Catholic Church, a religious and sectarian institution, and by the members and parishioners thereof; that at all times therein mentioned said Mission San Diego has been and now is owned and controlled by a Roman Catholic bishop of California, and held by him in trust for the Roman Catholic Church and the members and parishioners thereof; that at no time therein mentioned has the said Mission San Diego, or any part thereof, been under the exclusive or any management or control of the state of California, as a state institution or otherwise, or at all; that the said San Diego Mission is not now, and at no time mentioned has been, conducted for the support or maintenance of minor orphans or half-orphans or abandoned children or aged persons in indigent circumstances.

The defendants filed a general demurrer to this complaint. The demurrer was overruled.

Defendants refused to answer within the ten days' time allowed by the court, and thereupon the court rendered judgment in favor of plaintiff, and in said judgment declared the said act of the legislature to be unconstitutional and void, and restrained and enjoined defendants from expending any of the state money so appropriated by the legislature.

The judgment included an order awarding costs to the plaintiff. The transcript includes a bill of exceptions on an order of the court denying defendants' motion to strike the cost bill of plaintiff from the files.

The defendants appeal from the whole and every part of the said judgment, and urge on their appeal: First, that the court erred in declaring the said act of the legislature unconstitutional; and second, the court erred in denying the motion of defendants to strike the cost bill of the plaintiff from the files.

Respondent contends that the act of the legislature in question is in violation of sections 22, 30, and 31 of article IV of the state constitution.

Section 22 states that "no money shall ever be appropriated or drawn from the state treasury for the purpose or benefit of any corporation, association, asylum, hospital, or

any other institution not under the exclusive management and control of the state as a state institution, nor shall any grant or donation of property ever be made thereto by the state.''

Section 30 provides that ''neither the legislature, nor any county, city and county, township, school district, or other municipal corporation, shall ever make an appropriation, or pay from any public fund whatever, or grant anything to or in aid of any religious sect, church, creed, or sectarian purpose, or help to support or sustain any school, college, university, hospital, or other institution controlled by any religious creed, church, or sectarian denomination whatever; nor shall any grant of personal property or real estate ever be made by the state, or any city, city and county, town, or other municipal corporation, for any religious creed, church, or sectarian purpose, whatever; . . . ''

Section 31 provides that the legislature shall have no power ''to make any gift, or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; . . .''

Learned counsel for appellants argued that the act does not on its face indicate that the appropriation is made for the benefit of any sectarian institution or for any other purpose prohibited by the constitution; that the rule has been clearly established by the supreme court of this state that unless a statute on its face shows that money is appropriated in a manner prohibited by the constitution of the state its constitutionality cannot be questioned in judicial proceedings.

In support of their contention counsel cite *Stevenson* v. *Colgan,* 91 Cal. 649 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089], *Rankin* v. *Colgan,* 92 Cal. 605 [28 Pac. 673], and *County of Alameda* v. *Chambers,* 35 Cal. App. 537 [170 Pac. 650].

*Stevenson* v. *Colgan* was a case where a statute had been passed appropriating the sum of $125 per month, payable monthly, for the period of twenty-one months, for the relief of Colonel Jonathan Stevenson. The statute provided that said appropriation should cease upon the death of Stevenson. The sums paid under the provisions of the act were to be accepted by Stevenson in full payment and satisfaction of all claims of every kind and nature that he

might have or claim to have against the state for services or otherwise. In passing upon the constitutionality of the act the court held that inasmuch as the appropriation act was valid on its face, the court had no jurisdiction to go into the question of the real purpose of the appropriation.

In the case of *Rankin* v. *Colgan* there was an appropriation by the legislature of the sum of $250 to pay James W. Rankin for services in the state treasurer's office, under appointment by Governor George Stoneman, on account of the delinquency of Arthur January, deputy state treasurer. It was claimed that the act was unconstitutional and void in that it violated the provisions of subdivision 29 of section 25 and sections 31 and 32 of article IV of the constitution, because it attempted to award extra compensation to an officer after the service had been rendered, or was a gift of public money. The court referred to *Stevenson* v. *Colgan, supra,* and held that the act was not void on its face.

In *County of Alameda* v. *Chambers* the court held an appropriation act invalid which appropriated the sum of $300,-000 "to pay the claims of various persons and counties against the state of California for losses sustained by fire in the State Agricultural Society's pavilion at Sacramento, California." It was contended that the act was constitutional on its face and therefore must be upheld; that the court was not allowed to examine into extraneous questions of fact, and that the act did not make a gift within the constitutional inhibition, but was an appropriation for a public purpose. *Stevenson* v. *Colgan, supra,* and *Rankin* v. *Colgan, supra,* were cited as being in point. The court held that the act was invalid as a gift in view of section 31, article IV, of the constitution, and further held that the appropriation was not for a public purpose.

It is not claimed that the appropriation, in the act before us, is based upon a legal liability. Counsel for appellants tell us, in their brief, that the act "was in no way promoted by the Roman Catholic Church or any other sectarian institution. It was no more than the latest step of a well organized movement started by the Native Sons and Daughters of the Golden West." It is said in *County of Alameda* v. *Chambers,* 35 Cal. App. 545 [170 Pac. 650], that where the appropriation is not based upon any legal liability,

it constitutes a gift within the contemplation of the constitutional provision and cannot be maintained.

[1] It is settled that in passing upon the constitutionality of a statute the court must confine itself to a consideration of those matters which appear upon the face of the law *and those facts of which it can take judicial notice.* (*Stevenson* v. *Colgan,* 91 Cal. 652 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089]; *Bourn* v. *Hart,* 93 Cal. 321 [27 Am. St. Rep. 203, 15 L. R. A. 431, 28 Pac. 951]; *Conlin* v. *Board of Supervisors,* 99 Cal. 17–20 [37 Am. St. Rep. 17, 21 L. R. A. 474, 33 Pac. 753].) (Italics ours.)

[2] It appears upon the face of the act of 1921 that the legislature has appropriated $10,000 for the restoration of the San Diego Mission.

As matter of common knowledge, we take judicial notice of these facts:

The San Diego Mission is owned by the Roman Catholic Church. The title to the property is in the Archbishop of San Francisco, a corporation sole.

The Roman Catholic Church is a sectarian institution.

The San Diego Mission is not a state institution.

[3] Section 22 of article IV of the constitution provides that "no money shall ever be appropriated or drawn from the state treasury for the purpose or benefit of any corporation . . . or any other institution not under the exclusive management and control of the state as a state institution, nor shall any grant or donation of property ever be made thereto by the state." Section 30 of article IV provides that the legislature shall never "make any appropriation, or pay from any public fund whatever, or grant anything to or in aid of any religious sect, church, creed or sectarian purpose . . ." Section 31 of article IV provides that the legislature shall have no power "to make any gift or authorize the making of any gift of any public money or thing of value to any individual, association, municipal or other corporation whatever . . ." It would seem that a mere statement of the proposition is its own answer.

In graceful diction counsel for appellants further urge upon us that the restoration of the California missions is of such historical and educational interest to the state as to constitute a public purpose well within the power of the legis-

lature to provide for by appropriation of public funds.   We quote from their brief:

"The court, of course, will take judicial notice of the history of the Franciscan missions.   It is one of the most important phases of the history of this state.   There is included within the history of these missions the first Christian civilization of the State of California.   Nothing can be of greater interest to the student of California history than the story of the Franciscan missions . . .

"On July 16, 1769, Father Junipero Serra founded the Mission of San Diego at the port of that name.   This, which is the mission referred to in our statute, was the first mission founded in upper California, one hundred and fifty-three years ago, under the direction of Charles III of Spain.

"These Franciscan missions finally extended from San Diego in the south to Sonoma in the north, where in 1823 or fifty-four years later than the San Diego Mission, the last of these Franciscan missions was established.   These Franciscan missionaries were the original pioneers of California, and they established in all twenty-one missions, extending from San Diego in the south to Sonoma in the north, and all so located that on a march from San Diego to Sonoma the traveler could avail himself of the hospitality of each of these missions on each day of his travel."

We are familiar with the history of California.   We fully appreciate that the missions are reminders of a past filled with poesy and romance.   The good gray poet, Edwin Markham, tells us in his book "California the Wonderful," "the old missions—court and arcade and tower and garden—were planted on shores or valleys each a day's journey from another.   And these mission ruins mark no doubt the most distinctive and harmonious architecture of the nation. Wrought of the clay of the earth, they repeat in wall and tile the lines of hill and mesa from which they sprang." Many of the present cities in California arose about these early missions, and Spain's chime of seraphic and apostolic names still sound on mountain and mesa, on coast and canyon.

We know that Monterey was of old the capital of the state, a center of Spanish charm and courtesy.   Bret Harte, Stevenson, and Gertrude Atherton have celebrated it.   San Carlos Mission stands near by.   When we read the poem of

Bret Harte we hear the angelus as he heard it at the Mission Dolores in 1868:

> "Bells of the Past, whose long forgotten music
>    Still fills the wide expanse,
> "Tingeing the sober twilight of the Present
>    With color of romance."

Standing upon the top of Tamalpais, through the poet's eyes, we see the city of St. Francis, shrouded in fleecy fog "in gown and hood of her Franciscan brotherhood," sitting "by the Western Gate serene, indifferent of Fate."

Indeed, California has a literature and tradition all her own. It is beautiful, inspiring, wonderful. And, although we are keenly sensitive to its spell, we may not permit thought of it to influence us while examining the proposition before us in the light of the solemn enactments of our constitution. We must not close our eyes to the positive constitutional inhibitions against appropriation of public funds for other than lawful purposes.

In support of their contention that the restoration of the mission is a public purpose, counsel cite *Daggett* v. *Colgan,* 92 Cal. 53 [27 Am. St. Rep. 95, 14 L. R. A. 474, 28 Pac. 51]. In that case the supreme court dealt with the subject matter of a general public purpose being served in an appropriation act of 1891, appropriating $300,000 to meet the expenses of erecting buildings and maintaining an exhibit of the products of the state of California at the World's Fair Columbian Exposition held at Chicago in 1893. It was held that the appropriation was for a public purpose and for the promotion of public welfare, the court, among other things, saying: "There is no difference except in degree, between the appropriation contained in this act, and those which for years have been made without any question as to their validity, for the support of the State Agricultural Fair and the various district agricultural societies throughout the state." The justification for such expenditure was based upon the proposition that the state has the general power to provide for the public welfare. That it was not an appropriation for a public purpose can hardly be successfully asserted. Obviously, the purpose of the legislation was wholly different from that in question here, which has for its purpose the restoration of mission ruins, privately owned by a sectarian institution, at the public expense.

Our attention is called to the fact that twenty-one missions were established in California by the Franciscan padres. Restoration of one of them, at public expense, would open the door to the restoration of others, in the same manner. Then, probably, would follow the expense of maintaining such property at public cost. Disregard of the constitutional bar would render the public treasury easy of access for the levying of tribute, under cover of appropriation acts, by sects of every denomination, and other organizations, seeking money for the restoration of old buildings, upon the ground that they were of historical and educational interest and therefore of public concern.

We concede that the California missions are of historical and educational interest from a cultural and literary standpoint, but they approach no such classification as would make them the basis of the state's bounty or the subject of legislative appropriation in the guise of public interest, public good, or public welfare.

We are further told by counsel for appellants that "the fact of ownership by the Catholic Church, if such ownership is to be considered, is merely an incident." It is a matter, however, we cannot overlook. The incident is in itself sufficient to raise the bar of section 30 of article IV of the constitution. We may well say that when the people adopted the state constitution, containing the inhibitive provisions herein quoted and invoked, it was to meet situations similar to the one now presented to us for decision.

We have endeavored to make it clear that we are in sympathy with the meritorious movement having for its object the restoration and preservation of the missions, but no matter how praiseworthy we may believe such efforts to be, we must say that, in our opinion, the state constitution forbids that such work be done at the expense of the taxpayers. We believe that the act of the legislature under consideration is in manifest violation of sections 22, 30, and 31 of article IV of the state constitution, and that it is our duty to so declare.

[4] Appellants' second assignment is that the court erred in denying the motion to strike the cost bill of plaintiff from the files. Counsel for appellants say that the only point they wish to urge in this connection is that the state is not liable for costs. It appears from the record that the state

is not a party. True, certain individuals (appellants herein) have been sued in their official capacity, but that does not make the state a party to the action so that costs can be assessed against it. The appellants were acting without the scope of their official duties and clearly in violation of law; it was therefore within the discretion of the trial court to allow costs. (Sec. 1025, Code Civ. Proc.; *Lamberson* v. *Jefferds*, 116 Cal. 492 [48 Pac. 485]; *Power* v. *May*, 123 Cal. 147 [55 Pac. 796].)

It follows from the foregoing that the judgment from which this appeal is taken must be affirmed, and it is so ordered.

Richards, J., and Tyler, P. J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 24, 1923.