Argued December 31, 1929; affirmed February 25, 1930.

## CORLISS v. VAN DUZER
(285 P. 253)

*Guy C. H. Corliss* of Portland for appellant.
*J. M. Devers* of Salem for respondent.

McBRIDE, J. ■ This case is the first attempt to hold the state highway commission, or any member of that body, liable in an action of tort arising out of the conditions involving the building or maintenance of any public highway under its jurisdiction. It had under its jurisdiction, at the time of the accident, which was the occasion of this action, a system of highways aggregating in the neighborhood of 4,000 miles, some completed, some under construction, and a comparatively small mileage yet awaiting active operation. The members of the state highway commission were chosen from different parts of the state, and the general duties of the board were defined and enjoined by law. They are state officers of a high grade charged with the duty of selecting the routes and laying plans for the construction, maintenance and repair of thousands of miles of highway involving the expenditure of millions of dollars of the state finances. The law never contemplated that the board, or any member of it, should be at the place where work was being prosecuted and personally superintend the manner in which it was being done. The details of the work were necessarily in the hands of subordinates and the law provides for such subordinates. In fact, the very first duty imposed on the commission, after providing for their qualification and giving a bond, is found in § 4430, Or. L., which requires them; after electing a chairman, to appoint a state highway engineer "who shall be a competent civil engineer and

qualified by a technical training as well as practical construction experience in highway work.'' Realizing that not even a highway engineer could personally be present at every place where construction or repair work on the proposed 4,000 miles of highway work was to be performed, another provision of the same section requires the commission to ''employ such clerks, officers and assistants'' to said engineer as might be necessary, and requires said clerks, assistants and officers to ''take the prescribed oath of office'' before entering upon their duties, thus impliedly treating the whole body of assistants, et cetera, as officers in the highway department.

■ The whole tenor of the highway act, so far as it relates to immediate physical and personal supervision of work on the ground, seems to commit the supervision of such work to the engineer and his assistants. The commission locates and plans the work in a general way, the engineer and other subordinates supervise the work, and on this branch of the case the textbooks and decisions are practically unanimous in holding that public officers are responsible only for their own misfeasance and negligence, and not for the negligence of those who are employed under them, if they have employed persons of suitable skill. The rule is thus stated in Story on Agency (9th Ed.), § 321, as follows:

''The rule, which we have been considering, that where persons are acting as public agents, they are responsible only for their own misfeasances and negligence, and (as we have seen) not for the misfeasances and negligences of those who are employed under them, if they have employed persons of suitable skill and ability, and have not cooperated in or authorized the wrong, is not confined to public officers, or agents of the government, properly so called, in a strict legal

sense; but it equally applies to other public officers or agents, engaged in the public service, or acting for public objects, whether their appointments emanate from particular public bodies, or are derived from general laws, and whether those objects are of a local or of a general nature. For, if the doctrine of respondeat superior were applied to such agencies, it would operate as a serious discouragement to persons who perform public functions, many of which are rendered gratuitously, and all of which are highly important to the public interest. In this respect, their case is distinguishable from that of persons acting for their own benefit, or employing others for their own benefit.''

To the same effect see Mechem's Public Offices and Officers, sections 789 and 790, which read as follows:

''§ 789. Public Officer of Government Not Liable for Acts of His Official Subordinates. It is well settled as a general rule that public officers of the government, in the performance of their public functions, are not liable to third persons, either for the misfeasances or positive wrongs, or for the nonfeasances, negligences or omissions of duty of their official subordinates.

''This immunity rests upon obvious considerations of public policy, the necessities of the public service and the perplexities and embarrassments of a contrary doctrine.

''These official subordinates are themselves public officers, though of an inferior grade, and are directly liable, in those cases in which any such public officer is liable, for their own defaults. They are not infrequently appointed directly by the governmental power, and are removable only at its pleasure, but even in those cases in which they are appointed and removed by their immediate official superior, the latter is not liable.

''§ 790. Same Subject—Exceptions to This Rule. But this general rule is subject to certain exceptions,

important to be borne in mind and as well settled as the rule itself. Thus the superior officer will be liable, (1) where, being charged with the duty of employing or retaining his subordinates, he negligently or wilfully employs or retains unfit or improper persons; or, (2) where being charged with the duty to see that they are appointed, or qualified in a proper manner, he negligently or wilfully fails to require of them the due conformity to the prescribed regulations; or (3) where he so carelessly or negligently oversees, conducts or carries on the business of his office as to furnish the opportunity for the default; or (4) and a fortiori, where he has directed, authorized or cooperated in the wrong.''

In this state the authorities are very fully summed up and considered in *Antin v. Union H. S. Dist. No. 2 of Clatsop County,* 130 Or. 461 (280 P. 664), which is in accord with the authorities above quoted, and in which the court quotes with approval excerpts from the case of *Donovan v. McAlpin,* 85 N.Y. 185 (39 Am.Rep. 649); *Bowden v. Derby,* 97 Me. 536 (55 Atl. 417, 63 L. R. A. 223, 94 Am. St. Rep. 516), and *McKenna v. Kimball,* 145 Mass. 555 (14 N. E. 789), as follows:

''In the *Donovan Case,* the plaintiff, a scholar in a public school, was injured by falling into an excavation carelessly left open in the school yard by workmen in repairing the school building. The repairs had been ordered by the school trustees, who acted gratuitously and were under the direction of the superintendent of school buildings. No personal negligence was alleged or shown in any of the defendants. The court, through Andrews, J., said: 'Upon this state of facts we think the complaint was properly dismissed. The trustees, in directing the repairs to be made, and in employing workmen for that purpose, were acting within the scope of their authority. They were charged with the safe-keeping of the school property in their ward, and authorized to make needful repairs within certain

limits. The employment of workmen for this purpose was necessary, and if they employed competent men, and exercised reasonable supervision over the work, their whole duty as public officers was discharged. They were acting as gratuitous agents of the public, and it could not be expected that they should be personally present at all times during the progress of the work, to supervise the conduct of the workmen. It was said by Best, C. J., in *Hall v. Smith,* 2 Bing. 156, that no action can be maintained against a man acting gratuitously for the public, for the consequence of any act which he was authorized to do, and which, so far as he is concerned, is done with care and attention, and that such a person is not answerable for the negligent execution of an order properly given; and it was said by Nelson, C. J., in *Bailey v The Mayor,* 3 Hill (N. Y.) 538 (38 Am. Dec. 669), that if a public officer authorize the doing of an act not within the scope of his authority, or if he be guilty of negligence in the discharge of duties to be performed by himself, he will be held responsible; but not for the misconduct or malfeasance of such persons as he is obliged to employ.'

"In *Bowden v. Derby,* supra, which was an action against a street commissioner to recover for the negligence of the commissioner in not furnishing the plaintiff, a laborer, with a reasonably safe place in which to work and with reasonably safe tools and appliances with which to do the work, the court said: 'While the defendant was a public officer, the work in which he was engaged was none the less ministerial. It is claimed that the relation existing between the defendant and the plaintiff was that of master and servant; and, if this be the true construction of the facts set forth in the declaration, the defendant is undoubtedly liable under the well-recognized principles of law applicable to that relation. In repairing the street and building the wall the defendant was acting solely for the public. He had no interest in the work other than that which arose from the discharge of his duty as a public officer. The nature of that duty was such that

he could not perform it alone. It could not be executed without availing himself of the services of others. Not that he was obliged to employ any particular man or men. He had the right to select and discharge the men, the power to determine what work should be done, and the way and manner in which it should be done. None the less he was compelled to employ men who were paid, not by him, but by the city, who labored, not for his benefit, but for the public. He should not be held liable for the misconduct of those whom he is thus obliged to employ. Such employees are not his servants, and the rule of respondeat superior does not apply. *McKenna v. Kimball,* 145 Mass. 555, (14 N. E. 789). The foundation of the liability of one person for the acts and negligence of another is found in the doctrine of principal and agent. The fact that the defendant had the right to select and discharge the men whom he was compelled to use might be a good reason why he should be holden to exercise reasonable care in their selection, but we do not think that under the circumstances of this case it is sufficient to establish the fact that the plaintiff was the defendant's servant, and charge him with the onerous consequences which flow from that relation. Few men would be found willing to accept an office whose burdens were so disproportionate to its benefits. Sound public policy forbids that public officers should be held responsible for the negligence of those whom they are obliged to employ in the discharge of their duties in the execution of public works, when such officers are not chargeable with any want of diligence or due care on their part. *Bailey v. New York,* 3 Hill (N. Y.) 531, 38 Am. Dec. 669.' ''

■ In the present case as the pleadings do not allege that the commission was guilty of any negligence in the selection of its subordinates, it may be assumed that such subordinates were competent and skillful. So that, unless there was something done or omitted, which the defendant himself or the commission as such, should have done, there is no cause of action stated in

the complaint. The allegations on this point are found in paragraphs VII and XII of the complaint. Paragraph VII, as will be seen, relates to the failure of the persons engaged in said work (evidently referring to the workmen who were engaged in removing the slide) to use "adequate" or "proper" means to warn persons driving west on said highway, that any such operations were being carried on, or that there was any obstruction beyond the apex of the curve. The allegation is somewhat indefinite. Taking it most strongly against the pleader, which is the correct rule, it leaves the implication that there were *some* means taken to give such warning, but that in the opinion of the pleader, they were "improper" and "inadequate"; but, passing this, we come to paragraph XII already set forth in the statement, which is to the effect that said commissioners and this defendant negligently failed to give orders and instructions to protect persons traveling upon *said* highway (evidently meaning the highway from Roseburg to Coos bay mentioned in the complaint) and negligently failed to give any order or instruction, that while work of this highly dangerous character to travelers on the highway was going on at places where such work could not be seen by persons driving upon such highway until very close to the danger, to have a person stationed upon said highway in such a place as to give persons lawfully using such highway, including said Albert D. Jones, warning that said operations were being carried on, and that said highway was obstructed in the manner and at the time hereinbefore set forth.

In effect, this pleading would require of the commission to be constructively present at the scene of the slide, and, under penalty of damages, see that the pre-

cautions suggested by the pleader were carried out. There is no allegation that either the commission knew of the slide, or the condition of the road, or had an opportunity to know, or to make any special regulation in regard to it. There is no charge that it had failed to make regulations in regard to all slides and obstructions, and it is obvious that obstructions of that character and of almost any character require precautions varying in character according to the nature of the obstruction and condition of the road in the locality, and, to confine the precautions to any fixed rule, would be like requiring a physician to prescribe the same remedy for every disease without having an opportunity for diagnosis. The writer never drove a car a hundred miles in his life, but he has traveled many thousand miles in automobiles driven by others, and he is able to suggest to drivers one rule that will save many mishaps, and it is this: "When you are driving around a blind curve, always keep your car under control." If drivers will do this, their administrator will seldom be in court for damages.

Many interesting points are presented for discussion here, but we are satisfied that this complaint does not state facts sufficient to constitute a cause of action against the defendant and the judgment of the circuit court is affirmed.