381 P.2d 107

Ernest STONE, individually and as surviving spouse of Hathaway Stone, deceased, Darrell Stone and Denise Stone, by their Guardian ad Litem, Ernest Stone, Appellants,

v.

The ARIZONA HIGHWAY COMMISSION and Fred D. Schemmer, Frank E. Moore, Grover J. Duff, William P. Copple, and James R. Heron, members thereof, William E. Willey, individually and as State Highway Engineer, C. B. Browning, individually and as Deputy State Engineer, J. R. Van Horn, individually and as District Engineer, American Employers' Insurance Company, a corporation, Appellees.

No. 6936.

Supreme Court of Arizona.

En Banc.

April 25, 1963.
Rehearing Denied May 28, 1963.

Udall & Udall, Tucson, for appellants.

Wade Church, former Atty. Gen., Robert W. Pickrell, Atty. Gen., Phoenix, Ralph L. Fenderson, Jr., former Asst. Atty. Gen., Scottsdale, for Arizona Highway Commission and others.

Jennings, Strouss, Salmon & Trask, Phoenix, for appellee, American Employers' Ins. Co., a corporation.

LOCKWOOD, Justice.

Ernest Stone, individually and as surviving spouse of Hathaway Stone, deceased, and as guardian ad litem of Darrell and Denise Stone, sued Wallace & Wallace Construction Company (a road construction contractor); the Arizona Highway Commission and the members constituting the Commission; William E. Willey, individually and as State Highway Engineer; F. S. Berg, individually and as Deputy State Engineer; and J. R. Van Horn, individually and as District Engineer; and the bonding companies for the road construction contractor and for the State and Deputy State Engineers. The appeal is from orders dismissing as against all defendants except the contractor and his bonding company (judgment having been granted for the latter

with no appeal therefrom). The dismissal was on the ground that the complaint failed to state a claim against the Highway Commission and the named State employees for the reason that the Commission and the named engineers, being state employees, are exempt under the doctrine of governmental immunity from tort liability. See Larsen v. County of Yuma, 26 Ariz. 367, 225 P. 1115 (1924).

Taking as true the facts pleaded by plaintiff, Young v. Bishop, 88 Ariz. 140, 353 P.2d 1017 (1960); State ex rel. Morrison v. McCarrell, 80 Ariz. 243, 295 P.2d 1088 (1956), the case arose as follows: On the morning of September 27, 1955, Ernest Stone, his wife and two children were traveling east out of Tucson toward Benson, Arizona, along U. S. Highway 80, an interstate and much-traveled highway. As they approached Mountain View, Arizona, they came to a point at the crest of a hill where the newly built portion of the highway intersects with the old road. Certain markings and signs located at that spot directing traffic to turn left on a curve in the old road had not been removed. Actually, the new road had no such curve. Mr. Stone was misled by those markings into turning left into the path of an oncoming car which could not be seen as it was approaching from the east over the rise of the hill. The two vehicles collided, causing the death of Mrs. Stone and various injuries to Mr. Stone and the two children.

The plaintiff claimed that the defendants had failed to keep the highway at that place in a safe and proper condition for travel by failing to maintain and provide any warning to drivers of automobiles of the dangerous nature of the highway and by not removing markings and signs on the highway which were misleading to a driver. Plaintiff also claimed that the defendants had actual knowledge, or in the exercise of reasonable precautions should have known of this condition as it had existed for several months prior to the happening of the accident.

■ We are of the opinion that when the reason for a certain rule no longer exists, the rule itself should be abandoned. After a thorough re-examination of the rule of governmental immunity from tort liability, we now hold that it must be discarded as a rule of law in Arizona and all prior decisions to the contrary are hereby overruled. We recently stated in Hernandez v. County of Yuma, 91 Ariz. 35, 36, 369 P.2d 271, 272 (1962):

"It requires but a slight appreciation of the facts to realize that if the individual citizen is left to bear almost all the risk of a defective, negligent, perverse or erroneous administration of the state's functions, an unjust burden will become graver and more frequent

as the government's activities are expanded and become more diversified."[1]

Because this rule is so deeply entrenched in our case law, we feel it is important and necessary to herein set out its evolution from its medieval English background to our present day Arizona law. Sovereign or governmental immunity began with the personal prerogatives of the King of England upon the theory that "the King can do no wrong," and even though at a very early date in American history we overthrew the reign of the English King the doctrine somehow became entrenched in our judicial code. Professor Borchard has termed this phenomenon as "one of the mysteries of legal evolution." Borchard, Governmental Liability in Tort, 34 Yale L.J. 1, 4. Its survival for such a great period of time in this country, where the royal prerogative is unknown, has perhaps been even more remarkable, considering it has been universally criticized as an anachronism without rational basis. Most writers and cases considering this fact have claimed that its only basis of survival has been on grounds of antiquity and inertia. Hernandez v. County of Yuma, supra; Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961); Borchard, supra.[2]

The rule of sovereign immunity had its judicial genesis in the case of Russell v. Men of Devon, 100 Eng.Rep. 359, 2 T.R. 667 (1788).[3] That case involved a suit against all the male inhabitants of the County of Devon for damages occurring to Russell's wagon by reason of a bridge being out of repair. The court disallowed the action mainly on the grounds that there was no fund out of which any judgment could be paid and "it is better that an individual should sustain an injury than that the public should suffer an inconvenience."[4] The court concluded by saying that the suit should not be permitted because

1. In 75 A.L.R. 1196, a classic observation as to the sociological aspects of sovereign immunity appears which has since been quoted with approval in several jurisdictions; " * * * The whole doctrine of governmental immunity from liability for tort rests upon a rotten foundation. It is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, 'the King can do no wrong,' should exempt the various branches of the government from liability for their torts, and that the entire burden of damage resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs."

2. See also Spanel v. Mounds View School District No. 621, 118 N.W.2d 795 (Minn. 1962); Carlisle v. Parish of Baton Rouge, 114 So.2d 62 (La.App.1959), which stated that the doctrine has little practical basis in this age when liability insurance is universally available.

3. See Spanel v. Mounds View School Dist. No. 621, supra.

4. 100 Eng.Rep. 362, 2 T.R. 673.

the action must be brought against the public.[5] No rational or legal reason was expressed to sustain the decision except the practical problem of assessing damages against individual defendants. It should be noted, however, that the court did suggest that the plaintiff could sue the county itself instead of the individual inhabitants thereof.

This doctrine of the English common law seems to have been windblown across the Atlantic as were the pilgrims on the Mayflower and landed as if by chance on Plymouth Rock, for the first American case arose in Massachusetts. Mower v. Inhabitants of Leicester, 9 Mass. 247 (1812). The Massachusetts court held that even though the town was incorporated and had a treasury out of which to satisfy a judgment, the town was not liable under the common law. These two cases seem to have set the tumbleweed in motion and nearly every state adopted this same theory as to sovereign liability for torts of its agents or employees. State v. Sharp, 21 Ariz. 424, 189 P. 631 (1920); 81 C.J.S. States §§ 130, 131; 20 C.J.S. Counties §§ 215–221. Even though this doctrine has subsequently been overruled in England, the rule still exists in most of the states

of this country. Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E.2d 89, 86 A.L.R.2d 469 (1959).

The first case in Arizona which held that the sovereign was immune from tort liability occasioned by the negligence of its agents was State v. Sharp, supra. Without examining any real basis or reason for sustaining the doctrine this court stated:

"As to this question it is well settled by the great weight of authority that the state, in consequence of its sovereignty, is immune from prosecution in the courts and from liability to respond in damages for negligence, except in those cases where it has expressly waived immunity or assumed liability by constitutional or legislative enactment."[6]

This case set a precedent and other Arizona cases have since followed the rule without arriving at any basis other than that of stare decisis.[7] The case of Larsen v. County of Yuma, supra note 7; should be particularly noted at this juncture inasmuch as the defendants were almost identical with the case at bar and the facts were also very similar. In the Larsen case a

5. 100 Eng.Rep. 363, 2 T.R. 673.
6. 21 Ariz. 426, 189 P. 632.
7. Lee v. Dunklee, 84 Ariz. 260, 326 P.2d 1117 (1958); Grande v. Casson, 50 Ariz. 397, 72 P.2d 676 (1937); Larsen v. County of Yuma, 26 Ariz. 367, 225 P. 1115 (1924); State v. Dart, 23 Ariz.

145, 202 P. 237 (1921). But see Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304 (1947), wherein we held that a state highway patrolman would be liable for injuries resulting from negligence in driving automobile in response to a radio order.

demurrer was sustained on a suit by plaintiff, for damages arising by reason of the alleged negligence of both State and County Highway officers in maintaining a bridge. The Court affirmed the decision of the lower court by reference to the Sharp case and stating that neither the state nor its subdivisions, i. e. counties, may be sued for the negligence of their employees. This same rule has been relied on in cases dealing with cities,[8] county hospitals,[9] and school districts.[10] However, the rule has not been applied as stringently when dealing with cities. It has generally been held both in this state and elsewhere that a city is liable for injury to a person occasioned by the failure of the city to maintain its streets and sidewalks in proper condition.[11] The reason generally given for this variance is that the municipality's duty in this regard is considered ministerial and corporate rather than judicial and governmental.[12]

The strict rule as to liability of county hospitals also has undergone some change in Arizona. In 1962, the twin cases of Hernandez v. County of Yuma, supra, and McQueary v. County of Yuma, 91 Ariz. 37, 369 P.2d 273 (1962), were decided by this court. Therein we held that the county hospital would be liable for an employee's negligence which resulted in injury to a "paying patient." "If the government is to enter into businesses ordinarily reserved to the field of private enterprise, it should be held to the same responsibilities and liabilities." [13]

This trend to restrict the application of the theory of governmental immunity of states and their subdivisions has not been limited to Arizona alone. Several other states have made inroads on the doctrine, some to the extent of abandoning it completely. In a 1957 case, the Colorado court stated: "In Colorado 'sovereign immunity' may be a proper subject for discussion by students of mythology but finds no haven

8. City of Phoenix v. Greer, 43 Ariz. 214, 29 P.2d 1062 (1934); Jones v. City of Phoenix, 29 Ariz. 181, 239 P. 1030 (1925).
9. Lee v. Dunklee, supra note 7.
10. School Dist. No. 48 of Maricopa County v. Rivera, 30 Ariz. 1, 243 P. 609, 45 A.L.R. 762 (1926).
11. Harlan v. City of Tucson, 82 Ariz. 111, 309 P.2d 244 (1957); City of Phoenix v. Mayfield, 41 Ariz. 537, 20 P.2d 296 (1933); Strickfaden v. Greencreek Highway Dist., 42 Idaho 738, 248 P. 456, Anno., 49 A.L.R. 1057, 1075 (1926); 63

C.J.S. Municipal Corporations § 782, p. 88.
12. Ibid.
13. Hernandez v. County of Yuma, supra at 91 Ariz. 37, 369 P.2d 272. See also Fordham and Peques, "Local Government Responsibility in Tort in Louisiana," 3 La.L.Rev. 720 (1941); "That government is above the law is a notion that is hardly consistent with the doctrine of supremacy of law which has so long been taken as a basic tenet in our democratic faith."

or refuge in this Court."[14] However, this feeling was short-lived for three years later the same court invoked the immunity theory as to the governmental functions of a county.[15] The Florida court emulated Colorado, abolishing immunity as to governmental functions of municipalities on the ground that the Revolutionary War abrogated the doctrine that "the king can do no wrong,"[16] and thereafter retreating to say that this did not apply to the state, its counties, or its county school boards.[17]

Michigan followed the same course as Colorado and Florida. The City of Detroit was held not liable in a personal injury suit, but the court prospectively overruled governmental immunity from tort liability. See Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961). The court quoted Mr. Justice Holmes in stating that the reason for the rule of law laid down in the time of Henry IV had long since vanished and that it "simply persists from blind imitation of the past."[18] Subse-

quent opinions made clear that the above case only affected municipal corporations.[19]

Illinois, Wisconsin, Minnesota, and California seem to have been more adept in accomplishing abolition of this outmoded rule of law. In Molitor v. Kaneland Community Unit District No. 302, supra, the Illinois Supreme Court said that it "is unjust, unsupported by any valid reason, and has no rightful place in modern day society."[20] That court allowed recovery for the plaintiff in the particular case before the court but abolished sovereign immunity prospectively, as affecting future cases. Their legislature reacted to the situation by promptly reinstating tort immunity with respect to a number of government subdivisions.[21]

Wisconsin[22] and Minnesota[23] used the same technique for abolishing the immunity as did the Michigan court,[24] i. e. prospective abandonment. This therefore made the bulk of the decision in each case dictum. The City of Milwaukee case stated that even though the principal case only related specifically to a city, the abrogation of the doctrine should be considered as total:

14. Colorado Racing Com'n v. Brush Racing Ass'n, 136 Colo. 279, 284, 316 P.2d 582, 585 (1957).
15. Liber v. Flor, 143 Colo. 205, 353 P.2d 590 (1960).
16. Hargrove v. Town of Cocoa Beach, 96 So.2d 130, 60 A.L.R.2d 1193, (Fla.1957).
17. Kaulakis v. Boyd, 138 So.2d 505 (Fla. 1962); Buck v. McLean, 115 So.2d 764 (Fla.App.1960).
18. 364 Mich. 257, 111 N.W.2d 24.
19. Stevens v. City of St. Clair Shores, 366 Mich. 341, 115 N.W.2d 69 (1962);

Sayers v. School Dist. No. 1, 366 Mich. 217, 114 N.W.2d 191 (1962); McDowell v. Mackie, 365 Mich. 268, 112 N.W.2d 491 (1961).
20. 18 Ill.2d 25, 163 N.E.2d 96. This case discarded the rule of school district tort immunity.
21. 9 De Paul L.Rev. 39, Comment (1959).
22. Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N.W.2d 618 (1962).
23. Spanel v. Mounds View School District No. 621, supra.
24. Williams v. City of Detroit, supra.

"to all public bodies within the state: the state, counties, cities, villages, towns, school districts, sewer districts, drainage districts, and any other political subdivisions of the state—whether they be incorporated or not." [25]

The Minnesota Court was not quite so bold, for while abolishing tort immunity as a defense for school districts, municipal corporations, and other subdivisions of government, it expressly excluded the state itself on the theory "that a suit by an individual cannot be maintained against a sovereign state without its consent." [26]

After considering all the facets of the problem, we feel that the reasoning used by the California court in Muskopf v. Corning Hospital District, supra, has more validity and therefore we adopt it. The substantive defense of governmental immunity is now abolished not only for the instant case, but for all other pending cases, those not yet filed which are not barred by the statute of limitations and all future causes of action. All previous decisions to the contrary are specifically overruled.

There is perhaps no doctrine more firmly established than the principle that liability follows tortious wrongdoing; that where negligence is the proximate cause of injury, the rule is liability and immunity is the exception. By statute certain state officers have the duty of maintenance and upkeep of all state highways and routes.[27] This duty has been described as a:

"duty to construct and maintain its highways in a reasonably safe condition, in accordance with the terrain encountered and traffic conditions to be reasonably apprehended. * * * A highway may be said to be reasonably safe when people who exercise ordinary care can and do travel over it safely." Boyce Motor Lines v. State, 280 App.Div. 693, 117 N.Y.S.2d 289, 292 (1952).[28]

Many inequalities are created through the application of the sovereign immunity doctrine and in the instant case the illogical extreme is reached. We are asked to affirm a rule that denies recovery to one injured by reason of negligence of main-

25. 115 N.W.2d 625.

26. 118 N.W.2d 803, n. 42.

27. A.R.S. § 18–109:
"The state engineer shall have charge of all highway work and maintenance authorized by the commission, with power and duty to:
1. * * *
2. * * *
3. Supervise all construction work on state highways and state routes authorized by the commission, and have charge of the maintenance and upkeep of all such highways and routes." See also A.R.S. § 18–111, which gives the state engineer authority to appoint a deputy and assistant engineers necessary to perform the work of the department.

28. It might be noted at this time that New York has explicit statutory authority for recovering from the state damages sustained by the negligent construction and maintenance of its highways. See 2 Antieau, Municipal Corporation Law 117, § 1205 (1958).

tenance of the highway by certain state officers, although recovery may be had by one injured in a city, which has failed to maintain its own streets.[29] We have also held that under similar circumstances as these a highway construction contractor who is in the process of working on a highway and who is in control of it is liable:

> "The rule seems to be settled that when a public highway is abandoned, travelers must be protected at least to the extent of being notified in some adequate way of the fact that the old road has been abandoned. Barricades or notices warning the public of the danger of continuing to use the old way must be so placed as to put an unwary and unsuspecting traveler upon his guard." Breedon v. White, 62 Ariz. 256, 259, 156 P.2d 904, 906 (1945).[30]

It has been urged by the adherents of the sovereign immunity rule that the principle has become so firmly fixed that any change must come from the legislature. In previous decisions (the latest being Lee **v.** Dunklee, supra)[31] this court concurred in this reasoning. Upon reconsideration we realize that the doctrine of sovereign immunity was originally judicially created. We are now convinced that a court-made rule, when unjust or outmoded, does not necessarily become with age invulnerable to judicial attack. This doctrine having been engrafted upon Arizona law by judicial enunciation may properly be changed or abrogated by the same process.[32]

■ In the instant case the defendants were employees of the State Highway Department, accused of tortious conduct apparently upon the theory of *respondeat superior* and also in some instances upon the theory of personal negligence. Employers or principals, individual, corporate or *governmental,* are responsible for the tortious wrongdoing when committed by agents and employees acting within the scope of their

---

29. Harlan v. City of Tucson, supra; City of Phoenix v. Mayfield, supra.
30. See also Edmunds v. Germer, 12 Utah 2d 215, 364 P.2d 1015 (1961).
31. See also Larsen v. County of Yuma, supra. Several of the cases relied on in Dunklee have been overruled by the Muskopf v. Corning Hospital District decision, supra.
32. The reasoning advanced for abandonment of an analogous policy i. e. the doctrine of charitable immunity from tort liability is persuasive. The Washington Supreme Court considered this issue in Pierce v. Yakima Valley Memorial Hospital Ass'n, 43 Wash.2d 162, 260 P.2d 765, 774 (1953), and stated "We closed our courtroom doors without legislative help, we can likewise open them." In holding a charitable institution liable for tortious conduct of an employee we stated: "The declaration of 'public policy' is primarily a legislative function. The courts unquestionably have authority to declare a public policy which already exists and to base its decisions upon that ground. * * * It is equally true that when the reason for the existence of a declared public policy no longer obtains that the courts should without hesitation declare that such public policy no longer exists." Ray v. Tucson Medical Center, 72 Ariz. 22, 35–36, 230 P.2d 220, 229 (1951).

employment. However not all of the officers or employees in the chain of command, from the State itself, on down to the personally negligent employee, are necessarily liable. Liability may attach only to those individual employees who actually were guilty of some tortious conduct or, as in this case, to those individual employees who were in sufficient control of the highway or the particular job as to be in fact responsible therefor. Under the theory of respondeat superior, the State itself as employer would also be liable. It is not our concern at this time to determine which individual employees, if any, of the highway department may have been liable in the instant case. That is for the determination of the trial court. We do, however, say that defendant's motion to dismiss was properly sustained (although for a different reason than that given by the lower court) as to those defendants who were not directly supervising or in control of the portion of the state highway in issue.

The Arizona Statutes dealing with highways and the State Highway Commission[33] do not contemplate that the commission or any member thereof, should be at the place where work was being prosecuted and personally superintend the manner in which it was being done, or have actual or physical supervision of the repair and maintenance of roads. The law contemplates that state highways should be established under their general supervision, and expressly provides for a state engineer and other subordinates who are to handle the details of such work.[34] We feel that inasmuch as the Highway Commission was compelled by physical necessity and statutory mandate to appoint subordinates to perform and supervise the actual work, the members of the commission cannot, in the absence of misfeasance or actual negligence on their part, be held liable for the negligence of such subordinates. Coldwater v. State Highway Commission, 118 Mont. 65, 162 P.2d 772 (1945); Corliss v. Van Duzer, 132 Or. 265, 285 P. 253 (1930). The doctrine of respondeat superior as to the Commissioners is not applicable. Public officers are responsible only for their own misfeasance and negligence, and not for the negligence of those who are employed under them, if they have employed persons of suitable skill. Coldwater v. State Highway Commission, supra; Fernelius v. Pierce, 22 Cal.2d 226, 138 P.2d 12 (1943); Corliss v. Van Duzer, supra.

Under this same reasoning, it should be apparent that the State Highway Engineer could not personally be present at every place where construction or repair work on the highways of the state was to be performed. The State Highway Engineer and the Deputy State Engineer,[35] are to

33. A.R.S. §§ 18–106, 107, 109, 110, 111.
34. A.R.S. §§ 18–107, 109, 111.

35. See A.R.S. § 18–111(A).

provide "assistant engineers and district engineers necessary to perform the work of the department." [36] Plaintiffs do not allege that the State Engineer and his Deputy were in fact actively supervising or in control of the highway construction and maintenance and hence they could not be liable under the facts pleaded in the plaintiff's complaint.

The lower court struck from plaintiff's first amended complaint Paragraphs V and VIII. Paragraph V set out in haec verba a portion of the Highway Department's Standard Specifications which was incorporated in the state contract under which the construction work on the highway involved was done. Paragraph VIII contained the statutory duties of the defendant engineers by reference to A.R.S. § 18–109, and alleged that these duties had been breached. Plaintiff contends these should be restored. Inasmuch as Paragraph V dealt almost totally with the contractor's duty to the traveling public, it is now moot, as the dismissal of the contractor as a defendant was not appealed.

Paragraph VIII does have some relation to the issues involved in this case, and does not prejudice the defendants. While under Rule 12(g) of the Arizona Rules of Civil Procedure, 16 A.R.S. a court may order stricken from a pleading "any redundant, immaterial, impertinent, or scandalous matter," such motion is not favored and should "not be stricken from a pleading unless it is clear that it can have no possible relation to the subject matter of the litigation" [37] and the movant can show he is prejudiced by the allegations.[38] Paragraph VIII should therefore be reinstated in plaintiff's pleadings.

Affirmed in part, reversed in part. Case remanded for further proceedings in accordance with this decision.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER, J., and R. C. STANFORD, Jr., Superior Court Judge, concur.

NOTE: Justice RENZ L. JENNINGS having disqualified himself, the Honorable R. C. STANFORD, Jr., Judge of the Superior Court of Maricopa County, was called in to sit in his stead and participate in the determination of this appeal.

36. A.R.S. § 18–111(B).
37. Moore's Federal Court Practice, Vol. 2 § 12.21(2), p. 2317.
38. Goldberg v. Amalgamated Local Union No. 355, 202 F.Supp. 844 (D.C.E.D.N.Y. 1962); See also Budget Dress Corp. v. International Ladies' Garment Workers' Union, 25 F.R.D. 506 (D.C.S.D.N.Y. 1959).