451 P.2d 639

Homer A. MASSENGILL and Ruby Massengill, Administrators of the Estate of George B. Platt II, Deceased; Homer A. Massengill and Ruby Massengill, Administrators of the Estate of Billie M. Platt, Deceased, Appellants,

v.

YUMA COUNTY; Travis Yancey, Sheriff of Yuma County; and Earl W. Keenum, Appellees.

Eva McCULLOUGH, surviving widow of Robert M. McCullough, Deceased, Appellant,

v.

YUMA COUNTY; Travis Yancey, Sheriff of Yuma County; and Earl W. Keenum, Appellees.

Harry CARNEAL and Mary Carneal, his wife, Appellants,

v.

YUMA COUNTY; Travis Yancey, Sheriff of Yuma County; and Earl W. Keenum, Appellees.

Nos. I CA–CIV 731 to 733.

Court of Appeals of Arizona.
March 13, 1969.

Rehearing Denied April 10, 1969.
Review Granted May 6, 1969.

Moore, Romley, Kaplan, Robbins & Green, by Craig R. Kepner, Phoenix, for appellants.

Browder, Gillenwater & Daughton, by Robert W. Browder, Phoenix, for appellees.

MOLLOY, Judge.

The common question before us in these three consolidated appeals is whether plaintiffs-appellants have stated a claim upon which relief can be granted against the three defendants-appellees. The complaints here tested alleged the negligent failure of a deputy sheriff to arrest two law-violating drivers whose subsequent conduct resulted in the death of the plaintiffs' decedents.

Plaintiffs' decedents were killed shortly after midnight on August 9, 1964, on State Highway 99, a few miles north of Parker, in Yuma County. According to the plaintiffs' complaints, their deaths were caused by the grossly negligent and wanton misconduct of John Whaley, deceased, and David Wood. It is alleged that Whaley and Wood were drinking alcoholic beverages in the vicinity just prior to the accident. Against this backdrop, we set forth in full plaintiffs' allegations bearing upon the liability of defendants. The three complaints contain the same verbiage:

"(1) At all times herein mentioned Travis Yancey was the duly elected, qualified and acting Sheriff of Yuma

County, Arizona, and Earl W. Keenum was a duly appointed, qualified and acting deputy sheriff of Yuma County, Arizona, acting within the course and scope of his employment.

"(2) During the late evening of August 8, 1964 and early morning of August 9, 1964, Earl W. Keenum was on duty in the parking lot used by patrons of the establishments known as Paradise Harbor and Sports Valley. Keenum knew or should have known that the foregoing establishments served alcoholic beverages, were frequented by minors, served alcoholic beverages to minors and were located along a stretch of dangerous highway which was mountainous, winding and narrow, contained sharp curves and steep hills and was heavily traveled. Keenum was occupying his marked patrol car, owned by Yuma County, which was equipped with an overhead flashing red light operated by a switch inside the car, which light when turned on, he knew or should have known from prior experience, would probably cause any driver being pursued to stop. Keenum's duty at that time included and required the apprehension and arrest of both parties to each sale of intoxicating beverages to minors and also included and required the apprehension and arrest of persons violating traffic laws and driving in an unsafe manner.

"(3) At the aforesaid time and place, John Whaley and David Wood drove their respective automobiles out of the aforesaid parking lot in a reckless manner and at a high and dangerous rate of speed. John Whaley and David Wood operated their vehicles in such a manner that they proceeded down the highway side by side and while driving in this manner passed by the patrol car of Keenum which was parked, as aforesaid, near the highway, whereupon Keenum drove onto the highway and followed behind said minors until the time of the accident, but made no effort whatsoever to apprehend them.

"(4) The vehicles being operated by John Whaley and David Wood were being operated in violation of the laws of the State of Arizona, in one or more or all of the following respects:

"(a) John Whaley was driving in a reckless manner, exceeding the speed limit, driving on the wrong side of the road, attempting to pass on a hill and on a curve, and driving while intoxicated.

"(b) David Wood was driving in a reckless manner, exceeding the speed limit, driving while intoxicated, and refusing to reduce his speed or allow John Whaley to pass him while traveling with both of the aforesaid cars abreast on a curve and hill.

"(5) All of the foregoing violations were committed in the presence of and were obvious and apparent to Keenum, who by virtue of his obligations as deputy sheriff thereupon had the duty to immediately arrest John Whaley and David Wood. Keenum knew or should have known that the driving of John Whaley and David Wood at that time created an extremely dangerous hazard to other motorists on River Road.

"(6) If Keenum had acted with reasonable diligence, he could have arrested John Whaley and David Wood before they reached the point where the aforesaid accident occurred. In spite of his duty to apprehend and arrest John Whaley and David Wood and in spite of having sufficient opportunity to do so, Keenum failed to turn on his overhead light to signal John Whaley and David Wood to stop, and failed to make any or adequate attempt to apprehend and arrest John Whaley and David Wood.

"(7) As a direct and proximate result of the foregoing negligence and disregard of duty by Keenum, John Whaley and David Wood were allowed to drive further north on River Road, whereupon a few minutes later the accident occurred in the manner hereinbefore described."

Each of the defendants moved in the trial court to dismiss the complaints for failure

to state a claim upon which relief could be granted. Their motions were granted, and judgments were entered in their behalf upon a determination by the trial judge that there was no just reason for delay in the entry of final judgment.

 On a motion to dismiss, " * * * all of the material allegations of the pleadings of the nonmoving party are taken as true." Lakin Cattle Company v. Engelthaler, 101 Ariz. 282, 284, 419 P.2d 66, 68 (1966). A complaint should not be dismissed if it sets forth facts showing that the plaintiff is entitled to relief under any theory susceptible of proof. Veach v. City of Phoenix, 102 Ariz. 195, 197, 427 P.2d 335, 337 (1967). Every reasonable intendment is to be regarded in favor of the pleader and in support of the complaint. *Id.*

The fact that there are few authorities closely in point on the question before us is doubtless attributable to the fact that enforceable sovereign liability arising out of the performance of "governmental" as opposed to "proprietary" functions is a recent development in our national jurisprudence. There was no liability for governmental acts in Arizona prior to Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P. 2d 107 (1963). It should be borne in mind, however, that the doctrine of sovereign immunity usually was regarded as not shielding the negligent public official from personal liability. Law-enforcement officers were held personally liable for their negligent acts in the course of their public duties in Chaudoin v. Fuller, 67 Ariz. 144, 192 P.2d 243 (1948), and in Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304 (1947). *See also* the many cases collected in the Annotation at 60 A.L.R.2d 873. *But see* Larsen v. County of Yuma, 26 Ariz. 367, 225 P. 1115 (1924).

The distinct principle of *official* immunity has, however, often served to shield both the governmental entity and the individual public official from tort liability where the wrong complained of has been committed in the course of performing a "discretionary" as opposed to a "ministerial" public duty. The basis of the doctrine of official immunity is most cogently set forth in the opinion of the late Judge Learned Hand in the case of Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949). It is designed primarily to assure public officials of freedom from retaliatory litigation by persons adversely affected by official decisions, to the end that public officials may exercise the powers and duties of their offices in the public interest without fear or favor. Official immunity is sometimes referred to as "executive" immunity, and the breadth of its application to officials within the federal government is shown by the list compiled at footnote 5 in the Court's opinion in Norton v. McShane, 332 F.2d 855 (5th Cir. 1964), at 859–860. "Official" or "executive" immunity is usually distinguished from the principle of "judicial" immunity, which affords absolute protection to judges, magistrates, and quasi-judicial officers in the performance of the duties of their offices. *See* Wilson v. Hirst, 67 Ariz. 197, 193 P.2d 461 (1948); Davis v. Burris, 51 Ariz. 220, 75 P.2d 689 (1938); Industrial Commission v. Superior Court, etc., 5 Ariz.App. 100, 423 P.2d 375 (1967).

 We need not, in this jurisdiction, puzzle over the question of whether the doctrine of official immunity affords protection to first-level law-enforcement officers and the public entity which they serve. In Patterson v. City of Phoenix, 103 Ariz. 64, 436 P.2d 613 (1968), our Supreme Court held that, although police officers " * * * exercise some discretion in the execution of their duties * * *," 103 Ariz. 68, 436 P.2d 617, the employer municipality is liable for their tortious acts. While only the City of Phoenix was made a defendant in the *Patterson* case, a close examination of the Court's discussion of the subject of official immunity, 103 Ariz. 67, 68, 436 P.2d 616–617, leads us to the inescapable conclusion that, notwithstanding considerations of personal financial hardship, the protection of the doctrine of official immunity is to be likewise unavailable to the individual law-enforcement of-

ficer.[1] If, as does not seem likely, the Court's reference to liability insurance, at 103 Ariz. 67, 68, 436 P.2d 616–617, is intended to indicate that the individual officer might be clothed with immunity if liability insurance were lacking, that would be a matter of affirmative defense which we could not pass upon in the state of the present record. And if, in spite of references to the general terms "torts," "tortious acts," and "negligence," the Court intended the rule denying immunity to apply only to affirmative acts as opposed to negligent failures or omissions to act, no such distinction is suggested in the opinion and we do not take it upon ourselves to make such a restrictive refinement.

So the defendants stand before us naked of immunities, and the only question remaining is whether the complaint states a cause of action based upon traditional concepts of the law of negligence: Did the defendants, or any of them, breach a duty to plaintiffs' decedents which breach might be regarded as the proximate cause of plaintiffs' injuries?

That there is a *duty* to arrest law violators is clear. A.R.S. § 11–441, which enumerates the powers and duties of a sheriff, provides in part as follows:

"A. The sheriff shall:

"1. Preserve the peace.

"2. Arrest and take before the nearest magistrate for examination all persons who attempt to commit or who have committed a public offense.

"3. Prevent and suppress all affrays, breaches of the peace, riots and insurrections which may come to his knowledge."

Defendants, however, call our attention to a line of cases which hold that the duty of a sheriff and other law-enforcement officers to enforce the law is a duty owed to the general public only, and that a breach of the duty does not give rise to a private action by an individual who deems himself specially injured by the breach. The root authority for this rule seems to be South v. Maryland, 18 How. 396, 59 U.S. 396, 15 L. Ed. 433 (1856). The rule has been stated or applied in such cases as Finnish Workers Federation v. Horrocks, 42 F.Supp. 411 (W. D.Wash.1941); Jacobson v. McMillan, 64 Idaho 351, 132 P.2d 773 (1943); Annala v. McLeod, 122 Mont. 498, 206 P.2d 811 (1949); and in the more recent and pertinent cases of Tomlinson v. Pierce, 178 Cal. App.2d 112, 2 Cal.Rptr. 700 (1960), and Libertella v. Maenza, 21 Misc.2d 317, 191 N.Y.S.2d 191 (Sup.Ct.1959), aff'd, 16 A.D. 2d 831, 229 N.Y.S.2d 299 (1962).

The opinion of the Court in the century-old case of South v. Maryland, *supra*, outlined the functions of the office of sheriff in ancient England, and drew a distinction between the "ministerial" duties of a sheriff, such as serving process, and his more nearly "judicial" duties as conservator of the peace. The Court stated, at 15 L.Ed. 435:

"The powers and duties of conservator of the peace exercised by the sheriff

---

1. The Court's discussion of the subject does contain the seeds of a strong argument to the contrary. The Court notes the article by Mathes and Jones, Toward a "Scope of Official Duty" Immunity for Police Officers in Damage Actions, 53 Geo.L.J. 889 (1965), which favors an immunity for the individual officer. A theme of the article by Professor Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209 (1963), cited in *Patterson*, that the ultimate financial burden of a damage suit against a public official, such as a policeman, rarely falls upon the individual officer because of the existence of indemnity or liability insurance, 77 Harv.L.

Rev. 223, is challenged as "unsupported" and "of doubtful factual validity" in Supplement to 2 Harper and James, The Law of Torts, in Comment to § 29.9 n. 11 and in Comment to § 29.9 n. 14, at 285 of the Supplement. At 287 of the Supplement, in Comment to § 29.10 n. 29, the authors state that "The position of the policeman under the present scheme of liability seems to be a peculiarly and unfortunately exposed one, so far as personal liability is concerned. What seems to be needed here is greater protection from civil liability for the individual officer and governmental liability to those injured by police torts committed within the boundaries of official duty."

are not strictly judicial; but he may be said to act as the chief magistrate of his county, wielding the executive power for the preservation of the public peace. It is a public duty, for neglect of which he is amenable to the public, and punishable by indictment only."

■ South v. Maryland is not a constitutional decision, and it has no binding effect upon the courts of this state. Some aspects of the decision have been questioned. *See* Ingo v. Koch, 127 F.2d 667 (2d Cir. 1942), at 677–678. It is also clear that the sense in which the South v. Maryland Court used the term "magistrate," as descriptive of a sheriff, is not the meaning to be given the term in Arizona at this time. *See* A. R.S. § 1–215(11), as amended. Still, we would be disposed to accord South v. Maryland and similar authorities weighty respect were it not for the fact that they appear to be at odds with the spirit, if not the letter, of our own Supreme Court's decisions in *Stone, supra, Patterson, supra,* and *Veach, supra.*

In Veach v. City of Phoenix, *supra,* our Supreme Court held that an individual allegedly entitled to a supply of water for fire-fighting purposes could maintain an action against the defendant municipality for damages sustained when his building burned and there was no water available to fight the fire. The Court noted that its ruling was contrary to the general rule in the United States, but observed that the reign of the doctrine of sovereign immunity was probably responsible for the majority position. *Veach,* like *Patterson,* makes liberal reference to *Stone* and the dissatisfaction and injustices sought to be remedied by that decision. The conclusion is irresistible that our Supreme Court, in turning the sovereign liability corner at *Stone,* meant to sweep clean with a new broom, and that the later cases show a disinclination by it to see what it granted in *Stone* undercut by other restrictive, though distinct, doctrines. While *Veach* is concededly not directly in point in that the municipality there was held to be acting in the capacity of a public service corporation, and bound to serve all within its service area indiscriminately, it does uphold a private action for governmental nonfeasance. *Compare,* in this connection, the New York rule as to nonliability for failure to furnish fire protection stated in the trial court's opinion in Libertella v. Maenza, *supra,* 21 Misc.2d 317, 191 N.Y.S.2d at 193.

Admittedly no judicial decision has come to our attention specifically upholding a cause of action such as this. But, it is doubtful that any other jurisdiction has a trilogy such as *Stone, Patterson* and *Veach.* We cannot read these decisions and reconcile them in spirit with South v. Maryland, and similar holdings. In the context at hand, for the court to categorically hold there is "no duty" would be to reincarnate a species of official immunity.

To say that an officer is responsible only to the general public is merely a correlative and conclusory way of stating that a person injured by the negligence of the officer has no remedy against him. It seems, somewhat like the distinction between "discretionary" and "ministerial" acts, suspiciously like a " * * * way of stating rather than arriving at the result." Patterson v. City of Phoenix, 103 Ariz. 67, 436 P.2d 616, quoting Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 218 (1963).

Nor do we find compelling the logic of a distinction between "misfeasance" and "nonfeasance" as controlling the question of official and public liability in this area. Some courts have found the distinction meaningful, and have denied liability for "mere nonfeasance." *See* 18 McQuillin, Municipal Corporations § 53.80, at 337 (3d rev. ed. 1963), and cases cited at 2 Harper and James, The Law of Torts § 29.10, in footnotes 39–41, at 1645–1646. But the distinction between "misfeasance" and "nonfeasance," though of historical significance in the development of our law, often reflects nothing more than a difference in semantic orientation. Any lawyer clever enough to draw a mandatory injunction in

terms of restraint can, where public duties are involved, usually transform a nonfeasance into a misfeasance. Substance rather than semantics should control matters as serious as the rights and liabilities at issue here. It is obvious that an individual can be as badly damaged by inaction where there is a duty to act as by action where there is a duty not to act. The distinction between "misfeasance" and "nonfeasance" in this area is criticized by Prosser in his Law of Torts § 126, at 1017 (3d ed. 1964), and some courts have rejected the distinction.[2] We see nothing to be gained by giving the distinction renewed vigor in this jurisdiction.

Negligence has been simply defined as " * * * conduct which falls below the standard established by law *for the protection of others against unreasonable risk of harm.*" Restatement of Torts (Second), § 282 (emphasis added). An act or omission may be negligent if it involves an unreasonable risk of harm to others through the acts or conduct of a third person, even though such acts or conduct are negligent and criminal. *See* Restatement of Torts (Second), §§ 302(A) and 302(B). An injury may result, of course, from more than one proximate cause, if each was an efficient cause without which the resulting injuries would not have occurred. Brand v. J. H. Rose Trucking Co., 102 Ariz. 201, 205, 427 P.2d 519, 523 (1967). And *see*, Veach v. City of Phoenix, *supra.* If the " * * * likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, * * *" the third person's act, even though criminal or intentionally tortious, does not relieve the actor of the harm caused thereby. Restatement of Torts (Second), § 449.

Considered in the light of these fundamental principles of the law of negligence, it seems to us that plaintiffs' complaints state a cause of action. The complaints allege flagrant violations of the law, and a clear opportunity for the defendant deputy to arrest prior to the occurrence of this accident. The sufficiency of the allegations in this regard are demonstrated by comparison with those in Rubinow v. County of San Bernardino, 169 Cal.App.2d 67, 336 P.2d 968 (1959). All of the gaps noted in *Rubinow* are plugged by the allegations of the present complaints. Nor can we say, at this stage and with only the allegations of the complaints before us, that proximate causation is lacking as a matter of law.

We find distinguishable the case of Wilson v. City of Tucson, 8 Ariz.App. 398, 446 P.2d 504 (1968), recently decided by this court. In *Wilson,* the plaintiff submitted to the court for its consideration the facts he expected to be able to prove at trial. We found no duty to arrest under the circumstances disclosed. Some comparisons might be drawn between *Wilson* and Tomlinson v. Pierce, *supra.* We do not intend to retreat from our holding in *Wilson* and conceive that when the fact-finding function is completed in this action, a similar result may be reached. But, at this time, we recognize that these complaints state a cause of action.

The doctrine of *respondeat superior* is sometimes inapplicable to public officers, *see* Stone v. Arizona Highway Commission, 93 Ariz. at 394, 381 P.2d at 114. The question of whether the sheriff is personally liable for the negligence here alleged has not been raised either below or here and we express no opinion as to this.

Reversed and remanded for proceedings not inconsistent herewith.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

---

2. See, e.g., First Nat. Bank of Key West v. Filer, 107 Fla. 526, 145 So. 204, 207, 87 A.L.R. 267 (1933).