489 P.2d 869

STATE of Arizona, Appellant and
Cross-Appellee,

v.

Eric Roy JUENGEL, by and through his
Guardian ad Litem, Harold Roy Juengel,
Appellee and Cross-Appellant.

Civ. 1268.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 18, 1971.

Review Denied Dec. 21, 1971.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, by John H. Lyons, Phoenix, for appellant and cross-appellee.

Langerman, Begam & Lewis, by Samuel Langerman, Phoenix, for appellee and cross-appellant.

CASE, Judge.

This is an appeal from a judgment for appellee (plaintiff in the trial court) and

denial of appellant's (defendant in the trial court) motions for judgment notwithstanding the verdict or in the alternative for a new trial. The appellee questions the denial of costs to him as part of his award by way of cross-appeal. The parties will be referred to hereinafter as they appeared in the trial court.

In the late afternoon of November 7, 1965, the Juengel family while traveling in two cars in an easterly direction on U. S. Route 60–70, stopped at a roadside rest area located approximately 700 feet east of the Queen Creek Tunnel, three or four miles east of Superior. Plaintiff, then age eight, his sister and mother climbed up a path on the east side of a rock formation located at the south end of the rest area. Plaintiff's mother descended from the rock formation leaving the plaintiff and his sister who descended later by the same path. Subsequently, the plaintiff and his sister again walked to the peak of the formation, approximately 15 feet from the ground level. Plaintiff, instead of descending as he had done previously by way of the travel-worn path, began to climb down the face of the formation which appeared rugged and which contained numerous inscriptions. As plaintiff was climbing with his face to the formation, a rock on which his foot was resting gave way. He fell to the ground and was there struck by a dislodged rock. Plaintiff suffered considerable internal injuries. The matter was tried to a jury which awarded plaintiff $150,000.00 in damages.

■ The defendant first raises the issue of the State's duty to plaintiff. His argument, not specifically challenging any trial court action, seems to question the sufficiency of the evidence regarding negligence. Neither party disputes the fact that the State has a duty to maintain and repair public places so as to keep them reasonably safe for the ordinary purpose intended. Arizona State Highway Department v. Bechtold, 105 Ariz. 125, 460 P.2d 179 (1969). Defendant questions whether the State breached this duty to plaintiff.

This question is one of fact to be answered by the jury, unless the court could find that all reasonable men could come to but one conclusion in which case this would be a question of law. Shell Oil Co. v. Collar, 99 Ariz. 154, 407 P.2d 380 (1965); Moore v. Maricopa County, 11 Ariz.App. 505, 466 P.2d 56 (1970). The evidence of plaintiff's expert, a civil engineer and an engineering seismologist, indicated that the rock formation, created by blasting, was unstable; that the blasters had reason to know this; that proper blasting would have left a stable formation; and that trained maintenance crews should have noticed the raveling and should have taken some relatively simple steps to correct the problem. He further noted that the inscriptions on the rocks were tantamount to an invitation to climb thereon in the absence of a warning sign. This evidence, together with the victim's description of the accident, is sufficient to allow the issue of negligence to go to the jury. The State presented no evidence as to duty or liability. Thus, the issue of liability was properly presented to the jury on credible evidence and therefore will not be disturbed. Feighner v. Clarke, 101 Ariz. 334, 419 P.2d 513 (1966).

■ Defendant next argues that the trial court erred in giving the plaintiff's requested instruction on standard of conduct attributable to a child which reads as follows:

"With regard to the claim of the State that Eric Juengel was contributorily negligent, I instruct you that the degree or amount of care required to be exercised by a child differs materially from that required of an adult person. With respect to children as each case arises, it must depend upon its own facts and circumstances. No hard and fast rule has been, or can be, laid down based on age alone.

The criterion is intelligence, knowledge and experience. The standard or measure of duty in each case is determinable by the capacity ordinarily possessed and exercised by children of the age and

development of the class to which the individual belongs. A child is not expected or required to foresee what harm may happen to him, or to make a correct decision, or to appreciate danger to which he may be exposed. The law requires of him only that he exercise for his own safety, the same degree of care that children of his own age and experience would ordinarily exercise in similar circumstances."

Our Supreme Court in Southwest Cotton Company v. Clements, 25 Ariz. 169, 215 P. 156 (1923), recognized that the criteria of intelligence, knowledge and experience must be used to determine on a case-by-case basis the duty to which a particular child must conform his actions. We agree with defendant that the third sentence of the last paragraph of the instruction read in a vacuum tends to give the wrong impression since a child is expected to act, i. e., make correct decisions, foresee possible harm and/or appreciate danger, as would a child of similar age and experience under like circumstances. When the entire instruction is read, the import thereof clearly conforms to the rule of Southwest Cotton v. Clements, supra, and results in no error. Accordingly, this is not grounds for reversal since we must not isolate a portion of an instruction, but must interpret the instruction as a whole. *See generally*, City of Phoenix v. Harlan, 75 Ariz. 290, 255 P. 2d 609 (1953); Wolff v. First National Bank, 47 Ariz. 97, 53 P.2d 1077 (1936). It should also be noted that the exact language complained of was approved by the Arizona Supreme Court in MacNeil v. Perkins, 84 Ariz. 74, 86, 324 P.2d 211, 219 (1958).

■■ Defendant further urges error in the court's giving of an instruction on the attractive nuisance doctrine. Defendant contends the instruction was unsupported by the evidence and erroneously given. The instruction given follows closely § 339, Restatement of Torts 2nd (1965), which has been cited approvingly by our Supreme Court. Spur Feeding Company v. Fernan-

dez, 106 Ariz. 143, 472 P.2d 12 (1970); MacNeil v. Perkins, supra, Buckeye Irrigation Co. v. Askren, 45 Ariz. 566, 46 P.2d 1068 (1935). In order for the doctrine to apply, five elements must be present.

"1. The place where the (artificial) condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass."

The jury could find from the evidence that the State knew or had reason to know that children would be attracted to a rock formation located at a roadside rest area, especially one whose face is covered with inscriptions indicating the past presence of various individuals. Spur Feeding Company v. Fernandez, *supra*. We should also note that testimony of plaintiff's expert indicated that the rock formation was not in its natural state but rather was created by the dynamiting done many years before while the highway was under construction.

"2. The condition is one which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children."

The jury could find from the expert's testimony that the employees of the State who performed the excavation and blasting knew or had reason to know that their work had left the formation in an unstable condition. Testimony also indicates that trained highway maintenance men have the background to recognize signs of raveling and appreciate that raveling indicates the instability of a rock formation. The jury could also have concluded that the formation created an unreasonable risk of death or bodily injury from its instability and its height.

"3. The children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it."

In this regard, the plaintiff's expert witness, whose testimony was unimpeached, indicated that while a trained person would realize the danger, an untrained individual,

such as plaintiff, would not realize that the formation was unstable, i. e., that his weight would cause a rock to be dislodged. The plaintiff also testified he did not realize this risk.

> "4. The utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to the children involved."

No testimony was presented to show the formation had any value to the possessor, other than perhaps as a sightseeing object. The existence of many natural objects of sightseeing in Arizona causes us to discount the need of maintaining this artificial condition. Testimony also indicated that the formation could easily have been eliminated with earth moving equipment, or that unstable rocks could have been scraped away to prevent the dangerous condition. An easier remedy would have been to post a sign warning of the possible danger, or fencing off the formation from the remainder of the rest area. Though no reported accident had occurred prior to the instant incident, testimony indicated that the improper blasting created an unstable formation with greater risk of rocks being dislodged by climbers than natural rock formations, or formations formed by proper blasting. With such testimony, the comparative utility and risk was properly presented to the jury.

> "5. The possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

There is no evidence that defendant attempted any of the above suggested safeguards.

■ Defendant further complains that the doctrine of attractive nuisance applies only to trespassing children and not to child licensees or invitees as the court instructed and cites Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (1967); MacNeil v. Perkins, *supra,* and Downs v. Sulphur Springs Valley Electric Coop., 80 Ariz. 286, 297 P.2d 339 (1956), as supporting this proposition. Notwithstanding these cases, which we feel do not precisely consider this question, we think the trial court properly relied on § 343(B), Restatement of Torts 2nd (1965), which recites:

> "§ 343 B. Child Licensees and Invitees
> In any case where a possessor of land would be subject to liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee."

The Comment (b) to this section leaves no doubt as to the section's applicability to § 339 in that it reads:

> "Thus the rules stated in § 339, and the Comments and Illustrations to that Section are equally applicable where the child is a licensee or invitee."

See also Prosser, Law of Torts 3rd Ed., Ch. 11, § 59, page 375 and cases cited in nn. 53 & 54. Comment (c) to § 343 B. also pertinent herein recites:

> "Because of his status as a licensee or an invitee, the child may be entitled to greater protection than that afforded to a trespasser. This Section is intended to say only that he is entitled to at least as much."

■ If the cases cited by defendant limit the attractive nuisance doctrine to child trespassers, the instruction as given is still proper under the circumstances of this case. Plaintiff's status as trespasser, licensee or invitee was contested and properly treated as a question of fact for the jury's determination. Accordingly, the jury was instructed as to the definition of each term and the duty owed to each. The protection owed under the attractive nuisance doctrine instruction given was "to exercise reasonable care to eliminate the danger or otherwise protect the child." The court instructed that the protection owed to a licensee was "to exercise reasonable care to make the condition safe or warn of the condition and risk." The court further instructed that the protection owed to an invitee was "to exercise reasonable care to

protect them against the danger." Though the degree of protection owed to children under the attractive nuisance doctrine and to child licensees generally is couched in different language, the effective duty is the same. Comment (o), Restatement of Torts 2nd, § 339, explains the duty alluded to under the attractive nuisance doctrine as to "take the steps which a reasonable man would take under such circumstances." The Comment further indicates that a warning to children, under some circumstances, is all that can be expected of a reasonable man. Thus, since the facts supported the giving of an instruction on the attractive nuisance doctrine, save the issue of whether the child was a trespasser, the expansion of the doctrine to child licensees or invitees was not erroneous or at most harmless error since the duty defined thereunder was equal in degree to that required to be given to a licensee and less than that required to be given to an invitee, especially a child licensee or invitee who is the object of a greater duty due to his tender years. Shannon v. Butler Homes, Inc., *supra*.

■ Defendant next contends that the trial court gave an incorrect instruction regarding the duty of a possessor of land to a licensee. The instruction given is taken from § 342, Restatement of Torts 2nd (1965).[1] Defendant claims the instruction imposes a greater duty on the possessor than required by the Arizona case law. We find statements of the Arizona law consistent with this instruction. Southwest Cotton Co. v. Pope, 25 Ariz. 364, 218 P. 152 (1923); Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941 (1951); Shannon v. Butler Homes, Inc., *supra*.

■ In Sanders v. Brown, *supra*, our Supreme Court indicated that a possessor of land who knows of the concealed danger is negligent if he permits a licensee, unwarned of the peril, to come in contact therewith. The instruction given is merely a restatement of this rule. The phrase "reason to know" which is defined by the Restatement of Torts 2nd, § 12 as:

"(1) The words 'reason to know' are used throughout the Restatement of this Subject to denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists."

does not enlarge this duty.

■ Defendant next complains of error in plaintiff's *voir dire* examination of the jury. The portion complained of reads:

"Except for Mrs. Strickland, whose husband is a police sergeant who may have been involved in accident investigations at some time or other, are there any of you who either personally or whose members of your family have at some time or other had jobs that required them to be involved in investigations of accidents or adjusting claims arising out of accidents."

This is alleged to be a comment on the fact of insurance being mentioned to the jury, a practice forbidden by our case law in Tom Reed Gold Mines Co. v. Morrison, 26 Ariz. 281, 224 P. 822 (1924); Dunipace v. Martin, 73 Ariz. 415, 242 P.2d 543 (1952). In the instant case, plaintiff's *voir dire* did not mention insurance, but merely sought

---

[1] "§ 342. Dangerous Conditions Known to Possessor

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should

expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved."

to establish whether any of the prospective jurors or their families had jobs related to the investigation of accidents or adjusting of claims. These activities while carried on by insurance companies are also carried on by other companies not in the insurance business. Persons engaged in such occupations may develop certain biases, both in regard to the issues of liability and damages. Accordingly, counsel in order to intelligently exercise his peremptory challenges and challenges for cause and to select a fair and impartial jury should be permitted to make the above mentioned inquiry. Wilson v. Wiggins, 54 Ariz. 240, 94 P.2d 870 (1939); State v. Taylor, 9 Ariz.App. 290, 451 P.2d 648 (1969). We find no error in the above set forth question.

 Plaintiff's cross-appeal raises the question of whether the prevailing party can recover its costs when the opponent is the State. The determination of this question depends on the interpretation of the two following statutes:

"§ 12–345. Exemption of state, county or political subdivisions

No court costs shall be charged:

1. The state, a county or a political subdivision of a county.

2. A commission, board or department of the state, or of a county or a political subdivision of a county.

3. An official of the state, county or political subdivision of such county, who is a party to an action in his official capacity."

"§ 12–825. Judgment for plaintiff; amount; interest and costs

If judgment is rendered for plaintiff, it shall be for the amount actually due from the state to plaintiff, with legal interest thereon from the time the obligation accrued and without costs."

Section 12–345, A.R.S., has been interpreted to permit the successful litigant against the State to be awarded taxable court costs incurred in the litigation. Hammons v. Waite, 30 Ariz. 392, 247 P.

799 (1926); Graham County v. Cochran, 27 Ariz. 136, 230 P. 1112 (1924). The following reasoning given for this conclusion in Hammons v. Waite, *supra*, is as persuasive today as when it was written.

"Under our law, private individuals are frequently given the privilege of bringing suits against either the state or the county or a political subdivision of the latter, and may recover judgments amounting at times to many thousands of dollars. In so doing, such private parties are generally put to considerable expense in paying the statutory court fees and costs, in taking depositions of witnesses, in preparing, perhaps, a record on appeal. In all ordinary cases against other private citizens, they, as a matter of right, if successful in the action, recover the amount not only of the judgment, but of the taxable costs and expenses which they have incurred. It seems to us rather absurd to hold that the Legislature swallowed the camel of allowing a judgment against a public body or official while it strained at the gnat of costs, and, if there is any other reasonable construction which can be given to the statute, we should not hesitate to adopt it." 30 Ariz. at 395–396, 247 P. at 800.

Section 12–825, A.R.S., while being a part of our law at and since the time of the above mentioned case has never been interpreted by our courts. The plain language of § 12–825, A.R.S., seems to bring about a result contrary to the case law discussed. A closer examination allows us to interpret § 12–825, A.R.S., to harmonize with the previously alluded to case law. Section 12–825, A.R.S., is located in Article 2, Chapter 7 of our Code, which relates specifically to contract and negligence cases against the State. The section specifies the judgment shall be for the amount due with legal interest from the time the obligation accrued. Interest is only allowable as part of an award where the claim sued on is liquidated. Rossi v. Hammons, 34 Ariz. 95, 268 P. 181 (1928). There-

fore, we hold that this section applies only to contract cases involving liquidated damages and is inapplicable to negligence claims which are unliquidated in amount. We therefore hold that plaintiff is entitled to recover his taxable costs.

Defendant next urges that the trial court erred in refusing to instruct the jury that if plaintiff's parents were negligent and their negligence was the proximate cause of the accident then they should be prevented from recovering the amount of medical bills incurred by them on behalf of their child. In support of the proposition defendant cites Womack v. Preach, 64 Ariz. 61, 165 P.2d 657 (1946) and Town of Flagstaff v. Gomez, 23 Ariz. 184, 202 P. 401 (1921). The WOMACK decision deals with a wrongful death claim brought by parents of their sole deceased child. Under our law any recovery would be to the parents the sole beneficiaries of the deceased child's estate. The same is true in GOMEZ, where recovery was barred due to the parents' contributory negligence since the action brought was to benefit the parents as the sole beneficiaries of the estate.

The instant case is brought by the minor through his guardian *ad litem*, i. e., for the benefit not of the parents but of the child plaintiff. Defendant questions this distinction from the previously discussed cases in light of the strong possibility that plaintiff's parents will be appointed guardian of his estate after the judgment is paid and until the plaintiff reaches majority.

Our Supreme Court, in the case of Pearson & Dickerson v. Harrington, 60 Ariz. 354, 137 P.2d 381 (1943), discussed the rule in connection with this problem as follows:

"The plaintiff included in his complaint a claim for medical care, surgical and hospital expenses, including nurses' hire and drugs. It appears that at the time of his injury and the incurring of such expenses he was a minor and had not been emancipated. It is the contention of defendant that such expenses were the obligation of plaintiff's parents and not of plaintiff and that therefore the plaintiff was not entitled to recover such expenses. The trial court took the view that the plaintiff was a proper party to recover such expenses and its holding in that regard is assigned as error.

The defendant insists that the question was settled by this court in S. A. Gerrard Co. v. Couch, 43 Ariz. 57, 29 P.2d 151. In that case it was decided that the proper party to bring an action for damages for injuries to a minor child and for the expenses of medical care and treatment was the parent and not the child, citing 31 Corpus Juris 1114, section 252. The rule is one intended to protect a defendant against having to pay such expenses a second time and can have no place in a case where the parents have sued for such expenses as guardians *ad litem* of the child, or where the parents have consented to or approved the recovery of such expenses in an action by the child, which is the situation here. The parents' right to recover such expenses is an ordinary chose in action which they release to the injured infant and certainly, when they bring an action for such expenses in the name of the infant and as his guardians *ad litem*, it amounts in law to such an assignment. We find the authorities support this rule. Bauman v. City and County of San Francisco, 42 Cal.App.2d 144, 108 P.2d 989. In 37 A.L.R. 66, in a note, it is said:

'Some of the cases hold that a parent, by bringing an action as guardian or next friend of an injured minor child, in which a claim is made for lost time from work, diminished earning capacity from and after the injuries, medical expenses, etc., estops himself to claim those items in subsequent judicial proceedings in his own behalf; others state that he thereby waives or relinquishes the right of recovery to the child; while still others hold that by such an act the parent is "conclusively presumed" to have emancipated

the child or relinquished his rights of recovery. But whatever the manner of expression, it is held in such cases not only that the father cannot recover in a subsequent action after suing in such a manner, but that, if he brings such a suit in behalf of the child, recovery may be had by the child, in the first instance, thereby avoiding a duplicity of actions.'

The rule here announced appears to be supported by reason and authority and certainly is in the interests of all parties as it dispenses with any further proceedings to recover the expenses incurred because of the tort and consequent injuries." 60 Ariz. at 364–365, 137 P.2d at 385–386.

The question of entitlement of the award for future medical expenses, i. e., whether the claim is that of the minor payable out of his estate which is created by his personal injury recovery or whether this belongs to the parents, was not briefed and we especially refrain from deciding this question.

In the instant case, there was one verdict which determined (1) the minor was entitled to recovery for his personal injuries and future pain and suffering; (2) the defendant State was found responsible for the special damages which had accrued at the time of trial; and (3) defendant State was found liable for the estimated future special damages. These three items were not segregated in the verdict nor can this court segregate them.

The right of recovery for special damages which had accrued at the time of trial being the parents' claim though "assigned" to the minor were nonetheless subject to the defense of the parents' contributory negligence. Our review of the record persuades us that the evidence was such that the State had the right to have the issue of the parents' contributory negligence, if any, submitted to the jury in relation to the special damages which accrued before trial and as heretofore stated, we express no opinion as to future special damages.

It appears to this court that it is likely that the issue of the parents' contributory negligence, if any, can be tried without the necessity of the retrial of the basic issue of the State's liability to the minor. We state this as an opinion of this court, recognizing that the complexities of the presentation of the evidence must be decided by the trial court.

This cause is affirmed as to the State's liability for the minor's personal injuries and past and future pain and suffering. The amount which may be awarded therefor is the matter of a new trial.

This cause is reversed as to all elements of damage. The special damages sustained, together with the issue of the parents' contributory negligence, if any, may be shown on a new trial and the amount of future special damages and the person or persons entitled thereto, as well as the defenses, if any, which may be urged in relation thereto may also be shown. These separate issues can be determined by interrogatories in addition to the general verdict or by separate verdicts.

This cause is affirmed in part and reversed in part for such further proceedings as are not inconsistent with this opinion.

STEVENS, P. J., and DONOFRIO, J., concur.