4 P.3d 965

William H. DICKEY, on his own behalf and as Guardian Ad Litem of the minor child William Dickey; Rebecca Carlson Dickey, wife of William H. Dickey; and Jane Doe, natural mother of minor William Dickey, Plaintiffs–Appellants,

v.

CITY OF FLAGSTAFF, a municipal corporation, Defendant–Appellee.

No. 1 CA–CV 98–0026.

Court of Appeals of Arizona, Division 1, Department E.

May 27, 1999.

Dale H. Itschner and Jerry L. Smith, Flagstaff, for Plaintiffs–Appellants.

Mangum, Wall, Stoops & Warden, P.L.L.C. by Daniel J. Stoops and Michael H. Hinson, Flagstaff, for Defendant–Appellee.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Appellant William Dickey (William) was seriously injured in a sledding accident at a city park in Flagstaff. In his action against appellee City of Flagstaff (the City), the trial court granted summary judgment in favor of the City, ruling that the recreational use statute applied to give the City immunity from liability because it was not guilty of wilful, malicious, or grossly negligent conduct. The court also decided that the attrac-

tive nuisance doctrine did not apply in this case and that the statute in question is constitutional. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Because this is an appeal from summary judgment in favor of defendant, we view the facts in the light most favorable to plaintiffs. *See Tellez v. Saban,* 188 Ariz. 165, 167, 933 P.2d 1233, 1235 (App.1996).

¶ 3 In January 1995, when William was ten years old, he went sledding in Flagstaff with his stepmother, Rebecca Carlson Dickey (Mrs. Dickey), and his siblings. Looking for a place to sled, they arrived at Thorpe Park and noticed "lots of people" there. William sledded down Mars Hill at the park on an inflatable snow tube. On his first sled run down the hill, he collided with a tree and sustained severe injuries that resulted in paraplegia.

¶ 4 The City acquired the land known as Thorpe Park from the federal government in 1989. The quitclaim deed that conveyed the property to the City contains a covenant that the land "shall be used for public open space, park and recreational purposes." As early as 1964, a ski hill was artificially created on Mars Hill.

¶ 5 Despite the presence of this area that could be used as a sledding hill, the City periodically posted signs at Thorpe Park and Mars Hill that stated: "WARNING This Area Not Recommended For Any Form Of Sledding." However, the City parks department had a difficult time keeping signs on the trees at the top of the hill because people would remove the signs and use them for sleds. The City parks superintendent remembered that such warning signs were in place in January 1995, but Mrs. Dickey testified that there were no warning signs at the park on the day William was injured.

¶ 6 William, his father, stepmother, and mother (appellants) sued the City. They alleged that prior to William's accident, the City knew that members of the public had suffered injuries from sledding at Thorpe Park but that the City had made no reasonable effort to control or prohibit sledding or make it safe for the public.

¶ 7 Appellants filed a motion for summary judgment in which they argued that they were entitled to judgment as a matter of law on liability because no statutory immunity, including the Recreational Use Statute, Ariz. Rev.Stat. Ann. (A.R.S.) § 33–1551, applied to prevent recovery against the City. The trial court found that disputed issues of material fact existed and denied the motion.

¶ 8 The City then filed a motion for summary judgment arguing that it was immune from liability under A.R.S. § 33–1551 because no reasonable jury could find that it engaged in wilful, malicious, or gross negligence that caused William's injuries. In response, appellants re-urged their motion for summary judgment.

¶ 9 The trial court granted the City's motion. It found that A.R.S. § 33–1551 applied in the case, that attractive nuisance law did not apply, and that there was no wilful, malicious, or grossly negligent conduct that was a direct cause of William's injuries. The court also ruled that A.R.S. § 33–1551 does not violate the Arizona Constitution. It again denied appellants' motion for summary judgment.

¶ 10 Appellants filed a timely notice of appeal from the judgment in the City's favor. We have jurisdiction under A.R.S. § 12–2101(B).

## DISCUSSION

### I. Gross Negligence Standard

¶ 11 The trial court granted summary judgment in favor of appellee based on the Recreational Use Statute, A.R.S. § 33–1551. This statute provides that public or private owners of land are immune from liability to recreational users "except upon a showing that the owner ... was guilty of wilful, malicious or grossly negligent conduct which was a direct cause of the injury to the recreational ... user." A.R.S. § 33–1551(A). "Grossly negligent" is defined as "a knowing or reckless indifference to the health and safety of others." A.R.S. § 33–1551(C)(2).

¶ 12 Appellants argue that they presented sufficient evidence of gross negligence to withstand appellee's motion for summary judgment. According to appellants, they produced evidence that the City created the artificial condition of the sledding hill and encouraged its use for sledding even after being put on notice that numerous injuries had been sustained by sledders who used the hill.

¶ 13 In most cases, "the issue of gross negligence is a question of fact to be decided by the jury." *Walls v. Arizona Dep't of Public Safety,* 170 Ariz. 591, 595, 826 P.2d 1217, 1221 (App.1991) (citing *Southern Pac. Transp. Co. v. Lueck,* 111 Ariz. 560, 563, 535 P.2d 599, 602 (1975)). To escape summary judgment on the issue of gross negligence, the plaintiff must present evidence that is more than slight and that does not border on conjecture. *See id.* (citing *DeElena v. Southern Pac. Co.,* 121 Ariz. 563, 569, 592 P.2d 759, 765 (1979)). However, "[a] court may withdraw the issue of gross negligence from the jury only when no evidence is introduced that would lead a reasonable person to find gross negligence." *Id.* (citing *Smith v. Chapman,* 115 Ariz. 211, 214, 564 P.2d 900, 903 (1977)).

¶ 14 As noted above, for purposes of A.R.S. § 33–1551(A), "grossly negligent" is "a knowing or reckless indifference to the health and safety of others." This statutory definition is consistent with the following explanation by the *Walls* court:

> A party is grossly or wantonly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result.

*Id.* (citing *Nichols v. Baker,* 101 Ariz. 151, 153, 416 P.2d 584, 586 (1966)). Gross negligence is different from ordinary negligence in quality and not degree; a person can be very negligent and still not be grossly negli-

gent. *See Kemp v. Pinal County,* 13 Ariz. App. 121, 124–25, 474 P.2d 840, 843–44 (1970).

¶ 15 Reckless disregard of the safety of others is not only unreasonable but also involves a risk of harm to others substantially in excess of that found in negligent conduct. *See Townsend v. Whatton,* 21 Ariz. App. 556, 560, 521 P.2d 1014, 1018 (1974). "It must involve an easily perceptible danger of death or substantial physical harm, and ... [a] probability that it will so result ... substantially greater than is required for ordinary negligence." *Id.*

¶ 16 Appellants assert that the City was grossly negligent because it created the sledding hill and encouraged its use even after knowing that a number of persons were injured in sledding accidents on the hill. The evidence produced in the trial court, however, weighs against this argument.

¶ 17 First, the only evidence in the record concerning the creation of the sledding hill indicates that the area was cleared no later than 1964, long before the City acquired the park property in 1989. Thus, although the City may maintain the property, there is no evidence that it was grossly negligent in creating a dangerous condition that led to William's injuries or that it was grossly negligent in its maintenance of the property.[1]

¶ 18 Second, there is no evidence that the City "encouraged" the use of Mars Hill for sledding. In fact, the evidence shows that the City attempted to discourage sledding on the hill by posting warning signs. The fact that the City was unable to ensure that the signs were always present does not make it grossly negligent. *See Jones v. United States,* 693 F.2d 1299, 1305 (9th Cir.1982) (while government was negligent in failing to put up signs or ropes on ski slope, its failure to do so did not rise to level of wilful and wanton conduct); *Wringer v. United States,* 790 F.Supp. 210, 213 (D.Ariz.1992), *aff'd,* 10 F.3d 809 (9th Cir.1993) (failure of government to post signs warning against running

---

1. Appellants refer us to a videotape of the hill. However, the tape does not contain any narration, and we thus cannot tell what conditions appellants allege were created by the City and are dangerous. In addition, the area on the tape is not snow-covered, and the tape does not identify the area in which William was injured.

across frozen lake after a person fell through the ice and drowned did not constitute reckless disregard of possible results).

¶ 19 At most, the City permitted sledding at Mars Hill. In *Boaldin v. University of Kansas*, 242 Kan. 288, 747 P.2d 811, 812–12 (1987), the court considered whether the university engaged in gross and wanton conduct that took it outside the protection of the recreational use statute where it was aware of sledding on campus and of prior accidents but nevertheless allowed students to check out cafeteria trays for sledding. It concluded that the fact that the university was aware of sledding on campus, even in light of prior accidents, was not evidence of gross and wanton conduct. *See id.* at 815. The court reasoned:

> Almost every recreational activity has risks of injury, and that is the reason for adopting a provision such as K.S.A. 75–6104(n). If permitting recreational activity to occur knowing that injury may result is to be considered gross and wanton conduct, then every governmental entity in this state would be guilty of gross and wanton conduct. To adopt plaintiff's argument would render meaningless the exception from liability as contained in K.S.A. 75–6104(n). The recognition of the danger occasioned by sledding between two trees was best articulated by the University Director of Housing: "Any time you attempt to sled close to an immovable object, that is bad judgment. The hill is not dangerous. The tree is not dangerous. The judgment is what's dangerous."

*Id.*

¶ 20 We agree with the *Boaldin* court's reasoning. It is commonly known that people can get hurt while sledding, particularly if the sled run is in a wooded area where the sled could veer into a tree. Such an accident is especially possible when an inner tube or other device without directional controls is used for sledding. The purpose of A.R.S. § 33–1551 is to allow activities that have some risk of injury, such as sledding, to take place. *See Ward v. State*, 181 Ariz. 359, 362, 890 P.2d 1144, 1147 (1995) (in granting limited immunity, legislature intended to encourage landowners .to open lands to recreational users by limiting their liability to those persons). Obviously, if landowners had to assume the risk of possible injuries to recreational users, few recreational areas would be available to the public. Thus, to encourage the opening and continuance of recreation areas for the public, the legislature has placed most of the risk of recreational activities on such lands on the recreational users. Therefore, as expressed by the *Boaldin* court, allowing activities that have some risk of injury does not necessarily constitute grossly negligent conduct.

¶ 21 We acknowledge that it is possible that the level of previous injury from a recreational activity might be so high that a trier of fact could find that the landowner was grossly negligent in failing to prevent the activity. However, no such evidence of a high number of serious injuries was presented here. Appellants produced a computer printout of medical emergency assistance calls in Flagstaff between January 5, 1989, and January 22, 1995, which shows nine incidents described as sledding accidents in the vicinity of Thorpe Park. It cannot be determined from the printout whether the accidents occurred under similar conditions and for similar reasons as William's accident. Only one other sledding injury call contains the same response location as that shown for William's accident; others are in Thorpe Park and that area but the list does not show whether the other injuries occurred on Mars Hill. Thus, this evidence, even if admissible,[2] does not demonstrate a level of similar serious injuries that would enable the question of gross negligence to go to a jury.[3]

---

**2.** Although the trial court apparently considered the printout, it was lacking foundation and may not have been admissible. When a party fails to show that prior accidents occurred under conditions or at locations substantially similar to the conditions resulting in the accident at issue, they are not admissible on issues of fault or notice because "[w]ithout a foundational showing that other accidents occurred under similar conditions and for similar reasons, such evidence is prejudicial to the defendant." *Cotterhill v. Bafile*, 177 Ariz. 76, 80, 865 P.2d 120, 124 (App. 1993) (quoting *Burgbacher v. Mellor*, 112 Ariz. 481, 483, 543 P.2d 1110, 1112 (1975)).

**3.** Appellants also produced an excerpt from Platt Cline, *Mountain Town: Flagstaff's First Century*

¶ 22 Appellants failed to present evidence that the City's conduct was grossly negligent and directly caused William's injuries. Accordingly, the trial court correctly ruled as a matter of law that the City did not engage in any wilful, malicious or grossly negligent conduct that caused the injury to William.

## II.  Attractive Nuisance

¶ 23 Section 33–1551(B) provides that the statute "does not limit the liability which otherwise exists for maintaining an attractive nuisance...." Appellants argue that the sledding area meets all the traditional tests for an attractive nuisance and thus that the question whether the premises constituted an attractive nuisance is one of fact for the jury. Citing RESTATEMENT (SECOND) OF TORTS § 339 (1965), appellants acknowledge that the attractive nuisance exemption might not apply because William was not a trespasser, but they argue that if the traditional view of attractive nuisance is limited under the statute to trespassing children, the statute gives trespassing children more rights than invitees.

¶ 24 For the doctrine of attractive nuisance to apply, the following elements must be present: (1) the possessor of the place where the artificial condition exists knows or has reason to know that children are likely to trespass on the premises; (2) the possessor knows or has reason to know of the condition and realizes or should realize that the condition will involve an unreasonable risk of death or serious bodily harm to such children; (3) the children, because of their youth, do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it; (4) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to the children involved; and (5) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children. *See State v. Juengel*, 15 Ariz.App. 495, 498–99, 489 P.2d 869, 872–73 (1971). Application of the attractive nuisance doctrine is not limited to trespassing children but includes child licensees and invitees. *See id.* at 499, 489 P.2d at 873 (applying RESTATEMENT (SECOND) OF TORTS § 343B cmt. b, to RESTATEMENT (SECOND) OF TORTS § 339).

¶ 25 All of these elements could arguably apply in this case. However, for two reasons, we conclude that the trial court correctly ruled that this is not an attractive nuisance case. First, the attractive nuisance doctrine "only applies to objects of unusual character, more than ordinarily attractive, and never applies when the objects are natural and not placed on the property by the landowner." *Norton v. Black*, 12 Ariz.App. 209, 211, 469 P.2d 101, 103 (1970). Thus, natural conditions such as shrubs and trees, whenever planted, do not fall under the attractive nuisance doctrine. *See id.*

¶ 26 Appellants argue that the cleared sledding area is an artificial condition. However, we agree with the City that the removal of trees, stumps, and rocks to create a skiing and sledding area did not alter the natural slope of the area and did not entail the creation of an unusual, artificial, or unreasonably dangerous condition. As stated in *Ostroski v. Mount Prospect Shop–Rite, Inc.*, 94 N.J.Super. 374, 228 A.2d 545, 548 (N.J.Super.App.Div.1967), "a snow covered hill and slope extending from the property level to the street level is not an artificial condition" but "is a natural one" that "does not appear to be one which involves an 'unreasonable risk of death or serious bodily harm' to children." *See also Martin v. Spirit Mountain Recreation Area Auth.*, 566 N.W.2d 719 (Minn.1997) (sideward slope into trees on downhill ski area was a condition of nature and did not constitute an artificial condition). Furthermore, the trees alongside the sled-

251, in which the author wrote that apparently on either Mars Hill or a ski run on Sheep Hill, a novice skier crashed into a tree and died of injuries, thus reducing interest in skiing until the 1930s. This account of a skiing, and not a sledding, accident more than 65 years ago at an undetermined location cannot support an allega-

tion of gross negligence in this case. *See Montgomery Ward & Co. v. Wright*, 70 Ariz. 319, 322, 220 P.2d 225, 226 (1950) (where fact situation is inherently likely to change, prior situation must be fairly close in time to the event at issue to have probative value).

ding hill, one of which caused William's injury, were also natural objects that the City did not place on the property. Thus, neither the sledding hill nor the adjacent trees were artificial or unusual conditions.

¶ 27 Second, we agree with the court in *Kelly v. Ladywood Apartments,* 622 N.E.2d 1044, 1049 (Ind.App.1993), that the attractive nuisance doctrine cannot apply when the child was supervised by an adult. In *Kelly,* the court concluded that the "immediate presence" of the child's father negated "all of the policy reasons for shifting the duty to care for this child from his father to [the premises owner]." *Id.* The court explained:

> Under the attractive nuisance doctrine, the trespassing child must have failed, because of his youth, to discover the condition or realize the danger involved in going on to the defendant's property. As an adult, Kelly's father, not [the premises owner], is charged with the care of his son and with understanding and appreciating the possible danger that snow may cover objects which would obstruct a sled's path. As a matter of law, the presence of Kelly's father precludes the application of the attractive nuisance doctrine.

*Id.* (citations omitted).

¶ 28 Here, William's stepmother was with him at the sledding hill. She testified that she did not believe the trees posed any danger to sledding and that if she had thought there was any danger, William would not have gone down the hill. Therefore, because of the "immediate presence" of William's stepmother at the sledding hill, we conclude that the attractive nuisance doctrine cannot apply in this case.

### III. Constitutionality of A.R.S. § 33–1551

¶ 29 Appellants argue that A.R.S. § 33–1551 abrogates their constitutional right of action and is therefore unconstitutional. They maintain that the legislature, under the guise of regulation, has effectively deprived persons deemed to be recreational users of the constitutional right to bring actions for negligence against the owners of the recreational premises.

¶ 30 Statutes are presumed to be constitutional. *See Republic Inv. Fund I v. Town of Surprise,* 166 Ariz. 143, 148, 800 P.2d 1251, 1256 (1990) (citing *Eastin v. Broomfield,* 116 Ariz. 576, 580, 570 P.2d 744, 748 (1977)). The party asserting that a statute is unconstitutional has the burden of establishing so. *See State v. Cameron,* 185 Ariz. 467, 469, 916 P.2d 1183, 1185 (App.1996) (citing *State v. Double Seven Corp.,* 70 Ariz. 287, 293, 219 P.2d 776, 779 (1950)). Because this appeal involves the application of A.R.S. § 33–1551 to a governmental entity rather than a private party, we consider the constitutionality of the statute only as it applies to the City.

¶ 31 The "abrogation clause" of the Arizona Constitution provides that:

> The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation.

Ariz. Const. art. 18, § 6. The legislature does not violate this provision if it regulates a right of action, but it may not destroy the right of action. *See Boswell v. Phoenix Newspapers, Inc.,* 152 Ariz. 9, 18, 730 P.2d 186, 195 (1986).

¶ 32 The cause of action for negligence was established in pre-statehood law. However, at the time of statehood, Arizona applied the common law doctrine of sovereign immunity. *See Stone v. Arizona Highway Comm'n,* 93 Ariz. 384, 388–89, 381 P.2d 107, 111–12 (1963). The *Stone* court abolished governmental immunity, noting that sovereign immunity began in medieval England, became entrenched in our country's judicial code, and was historically followed in Arizona. *See id.* at 388–92, 381 P.2d at 111–15.

¶ 33 Therefore, given the wide acceptance of the doctrine of sovereign immunity at the time of Arizona statehood, citizens did not have a right of action to sue the government for negligence. *See State v. Sharp,* 21 Ariz. 424, 426, 189 P. 631 (1920), *overruled in part by Stone,* 93 Ariz. 384, 381 P.2d 107 (1963) (right of action against the state not recognized in the common law when Arizona Constitution adopted). Thus, we presume that the drafters of the Arizona

**430**

Constitution did not intend the abrogation clause to apply to protect negligence actions against the government because no "right of action" was recognized against the government at that time. *See also Morrell v. City of Phoenix,* 16 Ariz. 511, 517, 147 P. 732, 735 (1915) (city charter provision immunizing city from liability for negligence did not violate art. 18, § 6 because when Constitution was adopted, city charter was already in effect and thus no right to sue the city was cognizable at law).

¶ 34 In addition, § 33–1551 does little more than codify for the City, as an owner of recreational land, the protections given to landowners. Voluntary participants in sporting and recreational activities are presumed " 'to have consented, by their participation, to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of the participation.' " *Braun v. Davos Resort, Inc.,* 241 A.D.2d 533, 661 N.Y.S.2d 643, 644 (N.Y.App. Div.1997) (quoting *Turcotte v. Fell,* 68 N.Y.2d 432, 510 N.Y.S.2d 49, 502 N.E.2d 964, 968 (1986)) (13–year–old plaintiff assumed risk of losing his balance and sliding off trail while skiing). The landowner has a " 'duty to exercise care to make the conditions as safe as they appear to be. If the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them and defendant has performed its duty.' " *Id.* at 644–45 (quoting *Turcotte,* 510 N.Y.S.2d 49, 502 N.E.2d at 968).

¶ 35 The statute gives the City little more protection than it would have under the common law.

¶ 36 Thus, as applied here, the statute, like the common law, permissibly regulates the action but does not completely abrogate it because appellants could recover from the City if it engaged in wilful, malicious, or grossly negligent conduct that led to William's injuries. Accordingly, we conclude that A.R.S. § 33–1551 as applied to the City is constitutional.

## CONCLUSION

¶ 37 In summary, we hold that the trial court correctly ruled that the City did not engage in any wilful, malicious, or grossly negligent conduct that caused the injury to William, that the attractive nuisance doctrine does not apply in this case, and that A.R.S. § 33–1551 as applied here does not violate the Arizona Constitution. Accordingly, we affirm the summary judgment in favor of the City.

CONCURRING: JEFFERSON L. LANKFORD, Judge, and E.G. NOYES, JR., Judge.